1735, 1742.  SCHAUFELE *v.* CENTRAL OF GEORGIA
RAILWAY COMPANY, and *vice versa.*

1. The court may, in a proper case, instruct the jury that in determining
the extent of the plaintiff's personal injuries, they may take into con-
sideration any evidence tending to show that there would have been a
reasonable prospect of an increase of his earnings from what they were
at the time of the injury.  The evidence examined and held to justify
the charge in the present case.
2. The word "rule," as used in common parlance, has a double meaning.
It may refer to an express formula of conduct promulgated by some one
having authority to prescribe or command, or to a course or practice
pursued generally by one or more persons, as the case may be.
(*a*) By the rule of the master, the violation of which renders the servant
ipso facto negligent, is meant, not the general course or practice by
which the work is usually done, but an explicit promulgated regulation
or mandatory instruction.
(*b*) Proof of a general understanding among the employees that a cer-
tain rule (in the sense of a formulated rule) exists is not the proper
method of showing the existence of the rule; though proof that a
cautionary rule (in the sense of practice) is generally pursued by the
employees in doing a particular kind of work may be relevant as tend-
ing to establish a standard of common prudence.
(*c*) Where the word "rule" is used by a witness in such a connection as
to leave it subject to the ambiguity referred to above, the judge prop-
erly refuses to give in charge a requested instruction which gives the
evidence of this witness the effect of showing an express promulgated
rule.  The ambiguity in the language in such cases is properly left to
the solution of the jury.
(*d*) The court should not instruct the jury that the violation of a rule by
a servant is, as a matter of law, to be considered by them as the proxi-
mate cause of his injury, where it is issuable whether the violation
caused or contributed to the injury.
3. Rules of a railway company, when they are ambiguous, and especially
where other than a strict construction of them would render them un-
reasonable, are to be construed liberally in favor of an employee and
strictly against the company.

Action for damages, from city court of Savannah—Judge Free-
man.  February 23, 1909.

Argued April 15,—Decided October 5, 1909.

*Arnold & Arnold, Osborne & Lawrence,* for plaintiff.

*Lawton & Cunningham, H. W. Johnson,* for defendant.

POWELL, J.  Schaufele was hurt while coupling cars, in the
employment of the railway company.  His claim is that he went
in between the cars while they were not in motion, for the pur-
pose of removing a defective coupling pin, and that the train was

negligently started while he was so engaged. He sued for·damages. The evidence was conflicting. The first trial resulted in a verdict in his favor for $6,500. The trial judge set it aside, because, in his opinion, it was contrary to the evidence. The second trial resulted in a verdict in his favor for $10,000. A motion for a new trial was presented by the defendant, on the general grounds and on six special grounds. The court overruled the motion as to all the grounds except the sixth special ground, which was that the court erred in charging the jury as follows: "I have charged you that you must take into consideration all of these contingencies relating to dullness in business, increasing age, irregularity of employment, and such matters, in determining what his average earning capacity would be. I charge you, on the other hand, that you shall also take into consideration, and give it proper weight, any evidence, if you think there be such, tending to show a reasonable prospect of increased earnings on the part of the plaintiff." The error assigned as to this charge is that there was no evidence to warrant it. The court granted a new trial on this ground, and the plaintiff excepts. By cross-bill the defendant excepts and assigns error upon the court's refusal to grant the motion on the other grounds.

In the case of *Georgia Southern Railway Co.* v. *Wright*, 130 *Ga.* 700 (61 S. E. 720), Justice Lumpkin, on behalf of the Supreme Court, said, "It does not require much evidence on the subject [of prospects of increased earnings] to authorize a charge of the character of the one here given; but it requires some." The charge there referred to (in the same language as the one now before us, upon which the trial judge based the grant of a new trial) was taken from the illustrative charge prepared by Justice Samuel Lumpkin and set forth at length in the *Burney* case, 98 *Ga.* 1 (26 S. E. 730). In the *Wright* case, supra, there is set forth a summary of the facts appearing in other cases in which the evidence was held insufficient to justify the giving of instructions to the jury on this subject. The evidence in the case before us is, in our opinion, stronger as to this feature than that in the *Wright* case, or in the other cases there cited. ·The plaintiff testified, that at the time of the injury he was working as a "follow" switchman, having been engaged in this service but one day; that he had had considerable previous experience in railroad work;

that at the time of his injury he was getting $1.98 per day; that he had worked for the Southern Railway as a seal clerk in the Augusta yard office at $50 per month; that he was promoted to the position of yard conductor at $82 per month, and left this employment because "work got slack," and he, being the newest man, was turned off. He was educated in the public schools of Richmond county. He was 23 years old at the time of his injury. He had previously served in the positions of brakeman, flagman, seal clerk, and yard conductor; in the last mentioned capacity he had been employed by the defendant company previously in the same year, though he seemed to have served only intermittently in this capacity during this employment. Considering the plaintiff's age, his education, the experience he had had, the fact that he had previously achieved promotions and had been temporarily "demoted" (as he claimed and testified) only because of the condition of the times, and further, that he was at the time of the injury just entering upon a new employment in a position lower than those he had previously filled, we can not say that there was no evidence of prospects that his earnings would increase. The point involved in *Central R. Co.* v. *Minor, 2 Ga. App.* 804 (59 S. E. 81), is not presented in this case. We do not think that a new trial should have been granted on account of the giving of this instruction.

2. As we have stated, the court granted a new trial solely because of the supposed error considered in the preceding division of the opinion. The cross-bill of exceptions brings up the question whether even if the judge erred in granting a new trial on that ground, he should have granted it upon the other grounds of the motion. This was the second grant of a new trial. Section 5585 of the Civil Code, which forbids the interference of the appellate courts as to the first grant, is not applicable; and the grounds of the motion are to be considered just as if the judge had not granted the new trial on the special ground. Several of the grounds may be considered together. While he was testifying as a witness in his own behalf, the plaintiff, on cross-examination, stated, in substance, that while the company, so far as he knew, had no written rule on the subject, and while the company's rule book was silent on the subject, he knew it was a rule of the company for employees not to go in between cars while in motion, to

couple or uncouple them; that in his own judgment it was not safe to do so, and that it was his information that it was generally understood among the employers that it was contrary to rules to go in between cars in motion. By series of written requests, the court was asked to instruct the jury that it undisputedly appeared that there was a rule of the defendant company that employees should not go between moving cars to couple or uncouple them; that the plaintiff admitted knowledge of the rule, and that the rule would be binding on him, irrespective of whether it was printed in a rule book or was commonly understood among the employees to be the rule; also, that if the plaintiff, on the occasion of his injury, went between the cars while they were in motion, to uncouple them, he violated a valid, binding rule of the company, and could not recover; also that a violation of this rule would, as a matter of law, be the proximate cause of the injury, whether the defendant was also negligent or not; also that a violation of this rule would be negligence per se, and would preclude any inquiry on the part of the jury as to whether it was negligence or not, and would defeat a recovery. On this subject the court charged the jury that the existence of rules governing the conduct of employees may be made to appear by showing that they were written or printed in the rule book, or were orally promulgated, or were commonly and universally understood among the employees; that if it appeared in this case that the company had a rule forbidding employees to go between moving cars to uncouple them, it would be valid and binding irrespective of whether it was printed in a book, was orally promulgated, or was commonly understood among the employees; that if such a rule existed and the plaintiff violated it by going in between the cars to uncouple them, this would constitute negligence on his part and would preclude a recovery on his part if the violation caused or contributed to his injury; that the question whether the conduct of going between the moving cars to uncouple them was prudent or imprudent would not address itself to the jury if they found there was a rule of the company forbidding it. He further charged that, without reference to any rule on the subject, if the plaintiff chose an unsafe way to do the work when there was a safe one, he could not recover, and submitted to the jury the question of the plaintiff's negligence in going between the cars

in motion (in the event they should find he went between them while they were moving),· without reference to any violation of rule being involved therein.

We recognize as established by the precedents in this State the proposition that a party has the right to insist, especially by timely written request, that the judge shall eliminate from the consideration of the jury uncontested propositions, and that he should not submit, as issuable, propositions which are admitted or are not issuable under the evidence. However, the instructions given in the present instance were even more favorable to the defendant than it had any right to demand. It will be seen that the requests to charge were covered by the instructions given by the court, except in two particulars: he submitted to the jury the question as to whether there was a rule, and the question whether the violation of it, if there was any violation, caused or contributed to the injury. In other words, he refused to charge the jury that there was no issue as to the existence of the rule, and that a violation of that rule was to be considered, as a matter of law, the proximate cause of the injury. Under the testimony it is plain that to have instructed the jury that if the plaintiff violated the rule, the violation was to be considered as the proximate cause of the injury, would have been improper. Under a very reasonable view of the testimony, the jury could have ·found that, although the rule existed, and′ although the plaintiff went between the cars while in motion, with the purpose of uncoupling them, he made no attempt to do the uncoupling until the train had come to a standstill, and that after this and while he was adjusting the pin, the engineer started the train without a signal, or upon a signal negligently given by the conductor. Certain physical facts connected with the occurrence tend strongly to support this theory. In this view of the case the violation of the rule would not have been the proximate cause of the injury.

As to the existence of the rule, we do not think it was so clearly proved as to leave no scope for a finding of fact by the jury. The only proof as to it was in the plaintiff's own testimony. When all he said on this subject is taken together, his language is fairly susceptible of two constructions, either of which the jury might have adopted; his use of the word "rule" created an ambiguity, the solution of which was for the jury. The word "rule," as

applied to the conduct of employees, may mean either the definite promulgation or command of the employer, or it may refer to the practice generally or universally pursued by the employees themselves. Both of these meanings exist in common parlance. The lexicographers recognize both as legitimate. It was within the province of the jury to infer, from the testimony of the wit-ness, that the company had no rule, in the sense of a formal man-datory regulation on the subject, but that the general practice of the employees was not to go between cars in motion; that as a general rule or custom, it was understood among the employees of the company that it was improper to do the work in this man-ner. This view is emphasized by the fact that the plaintiff ex-plained that there was no such rule in the rule book which the company issued for the guidance of employees, and the defend-ant did not offer to show that any such rule had ever been pro-mulgated. Now when the courts refer to the rule of the master, the violation of which makes the servant ipso facto negligent, they refer, not to the practice of the employees, nor to the methods adopted by other prudent men in such cases, but to the explicit, express, promulgated command or instruction of the master, giving directions as to how the employees shall conduct themselves in the doing of the work. The master has the right to say expressly to the servant, "Do my work thus;" and if the servant disobeys such a rule he becomes, in a sense, a mere volunteer, and releases his right to claim indemnity from the master if he is hurt as a result of the violation of the rule. A rule of conduct practiced by the employees generally would tend to establish a standard of prudence, the violation of which might be negligence, so that a dis-regard of it would defeat a recovery (see Cranve v. Chicago R. Co., 93 Wis. 487 (67 N. W. 1132); Stevens v. San Francisco R. Co., 100 Cal. 554 (35 Pac. 135); Labatt's Master & Servant, §213 a, p. 474), but it is not the legal equivalent of the master's express law and command. We do not think that it would be competent to prove the existence of a formal rule by testimony that the plain-tiff had information that the employees generally understood that the employer had such a rule. James v. Northern Pac. R. Co., 46 Minn. 168 (48 N. W. 783). General reputation or rumor is not the proper method of proving that fact; there is a more direct way of showing it. General reputation or rumor is a sort of agglom-

erate hearsay, but it is hearsay nevertheless. The court properly declined to instruct the jury, as a disputeless proposition, that there was a rule of the master on the subject.

3. The remaining ground of the motion for a new trial is that the court erred in not allowing the defendant to prove that it had a rule, which the plaintiff had admittedly violated, by introducing a document, signed by him at the time when he had previously entered the employment of the company as a yard conductor, containing the following question and answer: "Do you fully understand that the rules of the company prohibit brakemen and others from going between cars or engines under any circumstances for the purpose of coupling or uncoupling or for the adjustment of pins, etc., when an engine is attached to such cars or train, and do you agree to be bound by said rules and waive any liability of the company to you for any results of disobedience or infraction thereof? (Answer) Yes." Without entering into a discussion of the other reasons argued as to admissibility of this testimony, we uphold the action of the trial court, on the following grounds: The plaintiff, when he was injured, was a switchman, and not a brakeman. The rule itself was not introduced, unless the promulgation of the rule is to be implied from the asking and answering of the question quoted. For present purposes we will, however, consider the question as disclosing the substance of the rule. To examine the language, and to make a mental application of it to the exigencies of practical train service, will disclose the fact that to give the language a liberal construction would be to render it subject to attack for unreasonableness. For a railroad company to say by invariable rule that no employee is to go between cars to make adjustments of pins or couplings under any circumstances while an engine is attached would be to give a direction so impracticable of execution as to warrant the belief that the master had made the rule without any intention that it should be obeyed. As the court said in the case of Strong *v.* Iowa R. Co., 94 Iowa, 380 (62 N. W. 799), "A rule which, if obeyed, would prevent the defendant from properly carrying on its business, does not commend itself to the courts as being made in good faith and in furtherance of any legitimate purpose."

But rules are usually not to be construed liberally in favor of the master, but strictly against him. The language before us does

not in express terms refer to switchmen or yard conductors. It says that there is a rule forbidding "brakemen and others" to go between the cars while the engine is attached. What "others" is not set forth. Since exigencies are constantly arising when some one must go in between the cars and ascertain the trouble, even when an engine is attached, it is plain that the expression "and others" can not be reasonably construed to include all persons connected with the service. It might be reasonable for the company to provide that this duty should not be performed by the brakeman or by certain other employees, leaving it to be performed by employees likely to do the work more prudently. It is true that this is a very strict interpretation of the language, but its very nature and relation to the subject-matter involved are such as to demand a very strict construction. See *W. & A. R. Co.* v. *Bussey, 95 Ga.* 584 (23 S. E. 207); *R. & D. R. Co.* v. *Mitchell, 92 Ga.* 82 (18 S. E. 290). It appearing that the plaintiff was not a brakeman, and it not appearing that he was one of the others to whom the rule specifically referred, the court did not err in refusing to give the statement in the document offered evidentiary standing, to the extent demanded by the defendant. It may be explained just here that the court did admit the writing for another purpose, but refused to allow its introduction for the purpose of showing a violation of the alleged rule by the plaintiff.

Considering the case as a whole, we have reached the conclusion that a new trial should not have been granted on any of the grounds assigned. The trial judge erred only in holding that he had erred.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed.*