### 25106. DAWSON MOTOR COMPANY *v.* PETTY.

DECIDED APRIL 18, 1936. REHEARING DENIED JULY 20, 1936.

*Bryan, Middlebrooks & Carter, John A. Dunaway, R. R. Marlin,* for plaintiff in error.

*H. A. Wilkinson, R. R. Jones,* contra.

GUERRY, J. H. A. Petty Jr. filed suit against the Dawson

Motor Company. The trial resulted in a verdict for the plaintiff in the sum of $9000. The defendant filed a motion for new trial containing the usual general grounds, and thereafter added by amendment several special grounds complaining of excerpts from the judge's charge. The judge overruled the motion, and the defendant brought a writ of error to review that ruling. The plaintiff's petition set out in substance that the defendant was and for several years had been engaged in the automobile business for the sale of Ford cars in Dawson, Georgia, and in furtherance of its business kept on hand a late-model Ford car to be used as a demonstration car, and did have a Ford V8 coupé on July 6, 1933, for this purpose; that on July 6, 1933, R. H. Laing was a stockholder, officer, and director of the defendant company, and was regularly employed by it as assistant-manager of its business; that among his duties was the demonstration of Ford cars; that on July 6, 1933, Laing, who was then driving the demonstration coupé of the Dawson Motor Company, invited the plaintiff and C. H. Peddy to ride with him, which offer they accepted; and that Laing drove the car beyond Bronwood and to Kinchafoonee Creek, about twelve miles from Dawson, and on the return journey, because of the gross negligence of Laing in driving said car at an excessive rate of speed, it was wrecked, resulting in severe and painful injuries to the plaintiff. The negligence of Laing was set out in detail as were the injuries sustained by plaintiff. The defendant's answer denied the material allegations of the petition. On the trial only two witnesses were sworn, the plaintiff and Dr. Kenyon. The plaintiff's evidence showed that the defendant had been engaged in the automobile business at Dawson for several years, and was the Ford agent at that place. R. H. Laing was a stockholder, officer, and employee of the defendant company, and sold and traded cars. In connection with his employment he was furnished a new-model Ford V8 as a demonstration car, his duty being to demonstrate these cars to prospective customers. By invitation of Laing the plaintiff was riding in this demonstration car on July 6, 1933, at the time the injury occurred. There was evidence from which the jury could have concluded that Laing was guilty of gross negligence at the time of the injury, and evidence to support the allegations in respect to the injuries received by the plaintiff. He had owned a car

for twelve years, but did not own one at the time, and had not owned one for five months. C. H. Peddy did not own a car at the time, but since the accident he has bought a Ford V8 from the defendant company. On cross-examination the plaintiff testified that he and his partner in business had built a "shack" out on Kinchafoonee Creek, twelve miles from Dawson, and entertained their friends there, and that it was a usual thing to have a "fishfry" out there. Peddy and Laing were members of a group that usually went to these fish-frys and set-back games. Sometimes they went once a month, sometimes twice a week. "We would just meet down town and decide to have a fish-fry. . .. That is the way it happened this particular afternoon. So far as I was concerned, I was going out on a purely social event, just like we had before. . . Mr. Laing asked me to go with him. I was not host on this occasion, not necessarily. Mr. Laing and myself got up some cheese and crackers to take along; the whole crowd were to pay for it. . . I had ridden with Mr. Laing before. As far as I was concerned it was a pleasure trip. I do not know what kind of trip it was of Mr. Laing's." The defendant introduced no evidence. In this court the defendant urges the following points that are to be considered: (1) That at the time of the injury to the plaintiff Laing was not in the prosecution of his master's business nor within the scope of his employment; (2) no gross negligence was shown; (3) the plaintiff did not exercise ordinary care for his own safety; (4) there was no evidence to support a charge to the jury on the plaintiff's increased earning capacity.

■ As to the second and third points, they were, under the evidence adduced, purely questions for the determination of the jury, and this court has no power to interfere.

■ Our Code, § 105-108, provides: "Every person shall be liable for torts committed by his . . servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." The rule of liability of a master for the torts of his servant is well stated in Stone v. Hills, 45 Conn. 44, as follows: "The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by

the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible." This rule is well supported in this State. Here we may eliminate that part of the rule with regard to "obedience to the express orders or directions of the master" (for there is no evidence or claim that Laing was acting in "obedience to the express orders or directions of the" defendant at the time of the accident), and confine ourselves solely to the question whether at the time of the injury Laing was in the prosecution of his master's business and within the scope of his employment. When the plaintiff showed by competent uncontradicted evidence that the defendant was the owner of the automobile that injured him and that the person operating it was, at the time of the injury, in the defendant's employment, the presumption arose that the servant was engaged in the master's business and within the scope of his employment; and the burden was then on the defendant to show that the person operating the machine was not his servant, or was not at the time of the injury engaged in the business of the master. *Gallagher* v. *Gunn,* 16 *Ga. App.* 600 (85 S. E. 930) ; *Brown* v. *Meikleham,* 34 *Ga. App.* 207 (128 S. E. 918) ; *Moore* v. *DeKalb Supply Co.,* 34 *Ga. App.* 375 (129 S. E. 899) ; *Perry* v. *Lott,* 38 *Ga. App.* 729 (145 S. E. 479) ; *Haygood* v. *Bell,* 42 *Ga. App.* 602 (157 S. E. 239) ; *Mitchem* v. *Shearman Concrete Pipe Co.,* 45 *Ga. App.* 809 (165 S. E. 889) ; *Fielder* v. *Davison,* 139 *Ga.* 509 (77 S. E. 618). The court properly charged the jury that "there is no presumption that the servant is at the time about the master's business when the plaintiff's own evidence shows to the contrary." The plaintiff in error here insists that although Laing, the driver, was shown to be stockholder, officer, and employee of the defendant, and that he sold and traded cars and was at the time driving the "demonstration car" of the defendant company, and that the plaintiff was riding in such car by invitation of Laing, since the plaintiff testified that he and Laing together with C. H. Peddy and others were going to a "fish-fry" and "so far as I was concerned I was going out there on a purely social event, just like we had before," the presumption that Laing was in the prosecution of his master's business and within the scope of his employment was rebutted. We do not take such a

favorable view of the evidence. A person who is a stockholder, officer, and employee of a corporation engaged in selling automobiles, and whose employment by the corporation is for the purpose of selling and trading cars, and who for such purpose is furnished by the corporation with a "demonstration car," is acting within the scope of his employment and about his master's business when he invites others to ride with him in the car for the express or implied purpose of interesting such persons in the purchase of an automobile. The fact that an automobile salesman carried another person or persons in his demonstration car to a "fish-fry" is not conclusive that such trip was purely for his own personal pleasure or social intercourse. Business relations and salesmanship of the present time are not dissociated from social contacts and pleasures; indeed they have become increasingly interwoven. Salesmanship may itself be such a fine art that its very artlessness becomes an art. The trip, so far as the other person is concerned, may be merely one of pleasure, and yet this person may in the mind of the salesman be a prospective customer. The evidence discloses that the plaintiff had been a car owner for twelve years but did not own a car at the time of the injury, neither did Peddy, who was with him. Peddy has since bought a V8 Ford car from the defendant. We can not say as a matter of law that the testimony of the plaintiff demanded a finding that the agent was not at the time of the injury about his master's business. This phrase is not capable of precise definition, but must be determined by an examination of the facts and circumstances, the character of the employment, and the nature of the wrong. It is generally a question for the jury. In *Fielder* v. *Davison,* supra, it was said that if an agent, while not engaged in his master's business "and against his instructions, takes the automobile of the latter for the purpose of taking a ride for his *own pleasure* [italics ours], and while so engaged negligently injures a person, . . the master will not be liable." And further, "and while he is using it for his own pleasure, *disconnected from any business of the master*" [italics ours], injury occurs, the master will not be liable. This issue was presented to the jury under proper instructions by the court.

■ Error is assigned on the following charge of the court: "You should also take into consideration and give the proper

effect to any evidence before you, if there be such, tending to show that there was reasonable prospect of increased earnings on the part of the plaintiff in case he has been injured," for the reason that there was no evidence to authorize such a charge, and therefore it was misleading and confusing to the jury. This charge was taken from the case of *Florida Central & Peninsular R. Co.* v. *Burney, 98 Ga.* 1 (26 S. E. 730). It will be noted that Judge Lumpkin, in giving this model charge, said in that case: "If the evidence so warrants" this charge may be given. In *Georgia Cotton-Oil Co.* v. *Jackson, 112 Ga.* 620 (37 S. E. 873), it was held to be error to charge in reference to the plaintiff's "prospect of increased earnings," where there was no evidence to warrant it. In *Southern Ry. Co.* v. *Scott, 128 Ga.* 244 (57 S. E. 504), a charge in the identical language of that involved in the present case was given; and it was held error, because there was no evidence on which to base it. See also *Georgia Southern & Fla. Ry. Co.* v. *Wright,* 130 *Ga.* 696 (61 S. E. 718), where the facts in the *Jackson* and *Scott* cases, supra, were discussed, and in which it was pointed out that evidence that the plaintiff was a young man, who enjoyed good health previously to his injury, and by reason of his injury was not able to earn as much by reason thereof, did not warrant a charge on "increased earnings." In *Georgia Ry. & El. Co.* v. *Carroll,* 143 *Ga.* 93 (5) (84 S. E. 434), a charge on increased earnings was held not error when the evidence showed that since his injury the plaintiff "had been promoted by his employer to a superior and more remunerative position, which he had accepted but was forced to relinquish in a few days because of his injuries." In *Schaufele* v. *Central of Ga. Ry. Co.,* 6 *Ga. App.* 660 (65 S. E. 708), the evidence was held to be sufficient to warrant a charge on the subject, and it was said: "Considering the plaintiff's age, his education, the experience he had had, the fact that he had previously achieved promotions and had been temporarily 'demoted' . . only because of the condition of the times, and further that he was at the time of the injury just entering upon a new employment in a position lower than those he had previously filled, we can not say there was no evidence of prospects that his earnings would increase."

A different rule applies where the injured person is a minor. *Betts Co.* v. *Hancock,* 139 *Ga.* 198 (77 S. E. 77). Judge Powell,

in *Central of Ga. Ry. Co.* v. *Minor*, 2 *Ga. App.* 804, 809 (59 S. E. 81), distinguished between "earning capacity" and "prospects of increased earnings." These terms are not synonymous. The evidence for the plaintiff was as follows: "I lost seven months from my regular employment. I am in the hardware business. I am a partner in the business with Mr. Norton. The name of my company is Petty & Norton Hardware Company. I had a drawing account. Mr. Norton and I did not work for a definite salary. Before that I was with the M. C. Huie Automobile Company. There is no way for me to tell what my earnings were at the time of the injury. I was earning something from my work. My duties were clerk and bookkeeper. I felt like my services were worth $150 per month. . . Since my injury I am not capable of earning as much as I was. I would say my earning capacity now is one half of what it was before I was injured. Sometimes I drew $100 from the Petty & Norton Hardware Company, sometimes $150, and sometimes less. My drawing account was charged against my services. . . I was thirty-one years old on July 6, 1933, I believe, in my thirty-second year. I was in good health. . . The amount I earned was the amount I sold, the sales. I did not have a fixed salary. At the end of the year, if I had a profit I would take it; and if I had a loss I would take it. . . I work there now and perform my duties. I am on the job practically every day, and have been for the past twelve months. I do not perform the same duties I did prior to this unfortunate accident. I kept books. I keep the books now. I clerk now, and wait on people the best I can." Dr. Kenyon testified that at the time of the injury, the plaintiff was in good health. This evidence is not different from that presented in the cases discussed in the *Wright* case, supra, and this court is bound by the ruling there made. If the error was harmful in those cases, we can not say it is not harmful here. The plaintiff may recover for decreased earning capacity, or decreased earnings, if such be shown; but a jury may not, without evidence to support it, speculate as to increased earnings of an adult person. There may be an increased earning capacity and no corresponding increase of earnings. The one is a possibility; the other an actuality. The one is what a person may become; the other is what he does become. The evidence fails to show that the plaintiff had any increase in

earnings, or prospective increase, which his injury prevented him from realizing or accepting; and under the authorities already cited, we think to charge upon this subject was clearly error. The remaining assignments of errors are without merit.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*