31803. LEE *v.* QUEEN.

Decided January 28, 1948. Rehearing denied February 19, 1948.

516

*Joe M. Ray, S. P. Cain,* for plaintiff in error.

*Jesse G. Bowles, Leonard Farkas, Walter H. Burt,* contra.

SUTTON, C. J. (After stating the foregoing facts.) The plaintiff was severely injured when he was struck by an automobile owned by the defendant and operated by one of the defendant's employees, James Perkins. The parties agree "that the evidence

shows that the injuries complained of by the plaintiff were due to the negligence of James Perkins, and the only question presented by the record for review is whether [the] defendant, M. G. Lee, is liable for the negligence of James Perkins at the time of the accident."

It appeared without dispute from the evidence that James Perkins was an employee of the defendant and that he was directed by the defendant to carry a Mr. Yon, and certain other employees of the defendant, home in the defendant's automobile on the day of the accident; that these instructions were written and were received by the employee; that the employee carried Yon, and the other workers, from the farm of the defendant to Cuthbert, where Yon left the automobile for the purpose of eating dinner at Sawyer's cafe; and that the driver carried certain of the other employees to their homes and went elsewhere in and around Cuthbert.

The accident occurred between 12:30 and 1:00 o'clock on a public street or alley which ran back of Sawyer's cafe and in the direction of McPherson's store, where the defendant's employee testified he was going to purchase some lard for himself. However, at the time of the accident and as a part of the res gestae of the occurrence, the jury was authorized to find that this employee, when asked "what he was doing on that street," replied that he was "to pick up Mr. Yon," and that about 30 minutes later, Yon came walking along the street from the direction the automobile was traveling.

While this driver testified on the trial that he was traveling on this street or alley at this time for purposes of his own wholly disconnected from his employment with the defendant, the plaintiff placed in evidence certain portions of depositions taken prior to the trial wherein this witness testified that, at the time of the accident, he had "started down to Mr. McPherson's corner to pick up Mr. Yon and take him to Carnegie, where he lived, as Mr. Lee (the defendant) had told him to do in the note," and that he "was going down there to buy [himself] some lard and get Frank Proctor's check cashed, but the main reason he was going down there was to get Mr. Yon and take him home." These depositions were introduced in evidence for the purpose of impeaching the witness. If the testimony of this witness, as

given on the trial, which is directly conflicting in material particulars with that of other witnesses and with his sworn evidence set out in the depositions, is disregarded, as the jury was authorized to do under the law of this State (Code, § 38-1806), the presumption of law arising from the ownership of the automobile by the defendant and its operation by the defendant's employee at the time and place of the injury, under the circumstances, is sufficient to support the verdict. In this connection, see *Dawson Motor Co.* v. *Petty*, 53 *Ga. App.* 746, 749 (186 S. E. 877), and citations.

Moreover, the jury was authorized to draw all reasonable inferences from the facts proved. It appeared that the defendant directed the driver of the automobile to use the automobile in taking Yon and the other employees home after 12:30 o'clock p.m. on the day in question, and that the accident occurred after the driver left the farm of the defendant and before he had carried Yon to his home in Carnegie, and that it occurred between 12:30 and 1:00 o'clock p.m. At the time of the accident and as part of the res gestae of the transaction, this witness stated that he was there to "pick up Mr. Yon," and the jury was authorized to infer that he was to pick him up and carry him to his home, as the defendant had directed him to do. Considering the depositions of this witness only for the purpose of impeaching the witness, there is sufficient evidence in the record to authorize the jury to find that the driver of the automobile, was, at the time of the accident, an employee of the defendant and engaged in using the defendant's automobile in and about the business of the defendant, as the defendant had directed and authorized him to do, and that the defendant was responsible for the acts of negligence of his employee towards the plaintiff.

Under all the facts and circumstances of the case, the verdict of the jury, which has the approval of the trial judge, is supported by evidence, and the trial judge did not err in overruling the motion for a new trial.

There being a dissent in this case by one of the judges of the division to which the case was assigned, the case was considered and decided by the court as a whole pursuant to the provisions of the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Gardner, Parker, and Townsend, JJ., concur. MacIntyre, P.J., concurs in the judgment of affirmance. Felton, J., dissents.*

FELTON, J., dissenting. If the jury believed all the testimony of the witness Perkins, which they would have to do unless he was impeached, they would have had to find that the deviation was not slight, but an entirely distinct, separate, and unauthorized mission, under which there could be no liability on the part of the employer. Assuming for the sake of argument that the plaintiff could impeach his own witness under the circumstances of this case, to wit, by beginning the direct examination by refreshing the witness's recollection by reading his answers to depositions to him, and by being "surprised" at his testimony, and not claiming entrapment—if the jury disbelieved the testimony of the witness Perkins to the effect that at the time of the injury he was not on his way to take Yon home, there is no evidence as to where the witness was going or why. If the remainder of the witness's testimony was accepted we have him going to Lee's house to put the jeep up and coming back to town to bring Beach, to get some lard and to see about Proctor's check. If the entirety of the witness's testimony was rejected, we have the permissible inferences only that Perkins brought the crew to town, that the witness injured the plaintiff on his way to McPherson's store or going in that direction while alone in the jeep, and that Yon went home on a bus.

The rule in such cases as this is, that the master is liable when injuries are inflicted by a servant while acting in the scope of his employment and in the prosecution of the master's business, and that, if the servant deviates slightly, the master is still liable if the deviation is so closely connected with the business that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the course of the employment (*Causey* v. *Swift & Company*, 57 *Ga. App.* 604, 196 S. E. 228) ; or, as the rule is stated in the Restatement of the Law of Agency, § 234: "One may be a servant, although a bad servant, in performing his master's business at a forbidden place if the place is within the general territory in which the servant is employed. One engaged to drive an automobile in New York City would not be in the service while driving in Albany; but a

servant directed to drive from New York to Albany on the west side of the Hudson would not cease to be acting within the scope of the employment while driving on the east side. In all cases, it is a question of degree whether or not the difference in place is so great as to make the act done substantially different from the act authorized. If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not liable for his conduct during the trip. . . Where the area within which the servant is to act is very limited, a slight departure from it may be effective to remove the act from the scope of employment although, if the employment covered a larger area, a greater departure would not." In this case, the jury could not find a verdict on the presumption that the servant was proved to be the employee of the defendant and was driving the vehicle, for the reason that specific authority for the one mission was relied on, and shows for itself the circumstances of its applicability, and no enlargement of the authority is shown from custom or practice, and the defendant also rebutted any other authority. The burden in this case was on the plaintiff to show that the injury occurred while Mr. Yon was being carried home, and that, if there was a deviation, it was so closely connected with the mission that the defendant would still be liable. In this case, under no theory does it appear that the injury occurred while the authorized mission was being carried out or that the deviation, if such it was, was connected in any way with the authorized mission.

The declaration of the alleged agent *dum fervet opus* immediately after the injury is not by itself evidence of the fact that Perkins was acting as agent at the time of the injury. It could only have efficacy as corroboration of a prima facie case of agency already made. *Akridge* v. *Atlanta Journal*, 56 *Ga. App.* 812 (194 S. E. 590), and cit. In this case, there is no prima facie evidence that Perkins was on an authorized mission at the time of the injury, and therefore the statement that he was on his way to take Mr. Yon home is insufficient to establish the fact embodied in the statement.

In my opinion the court has misconstrued the ruling in *Dawson Motor Co.* v. *Petty*, supra, and cases cited. The basis for the holding in the cases referred to is the ruling in *Fielder* v.

*Davison*, 139 *Ga.* 509 (77 S. E. 618). In that case the court cited Long *v.* Nute, 123 Mo. App. 204, 209, 210 (100 S. W. 511), which stated: "Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service." The other cases cited in the *Petty* case are based on similar facts. Before an inference is authorized that a servant is driving a vehicle at any particular time in the service of his master, it must first appear that the driver is a servant of the master, and that his employment *contemplates the driving of the vehicle generally,* in the absence of proof to the contrary. The rule does not mean that, if a yard man drives a car belonging to his master, an inference is authorized that he is driving it on authorized business of his employer. To give the rule any such application robs the owner of the right to have a prima facie case made against him, and in a case like this makes it most difficult for an employer to defend. The employer here showed a specific employment. He did not know on what mission his servant was engaged when the accident occurred, and a verdict against him can be based only on an unauthorized assumption that, because he was authorized to carry Mr. Yon to Carnegie, he was engaged in that undertaking under the facts of this case, when there is not an iota of evidence that he was so engaged and no facts from which such a fact could logically be inferred. I do not think that the evidence authorized the verdict.