The verdict was authorized by the evidence, and the trial judge did not err in overruling the defendant's motion for new trial.
 DECIDED JANUARY 28, 1948. REHEARING DENIED FEBRUARY 19, 1948.
Lucius Queen sued M.G. Lee for damages for personal injuries sustained on account of the negligent operation of the defendant's automobile by James Perkins, an employee of the defendant. It was contended by the plaintiff that Perkins was acting in the prosecution of his employer's business and in the scope of his employment at the time he drove the defendant's automobile against the plaintiff and injured him. The jury returned a verdict for the plaintiff. The defendant's motion for a new trial was overruled, and the exception here is to that judgment.
The evidence in the case was substantially as follows: The *Page 514 
defendant left the following note addressed to James Perkins, one of the defendant's employees on the jeep: "James: If Beach comes send him for Yon and crew. If he does not come you go get them and then get lumber of Burgins if it is ready. You or Beach take Yon and crew back home after 12:30 p. m. M. G. Lee." The defendant testified that James Perkins did not have his permission to drive the jeep on business for himself, and that the only authority he or Beach had was to Carry Yon and his crew home and then put the jeep in the defendant's yard. L. G. Head testified that the jeep was going south in Cuthbert, Georgia, and that the alley where the accident occurred leads down to Hamilton Avenue, in the direction of McPherson's store. O. H. Jordan testified that immediately after the injuries he asked James Perkins where he was going and Perkins said he was going to pick up Yon, and that Yon came up to the place of the collision about thirty minutes after it occurred. W. B. Taylor testified that the defendant lived on Villanova Street in Cuthbert, which runs off College Street, and if James Perkins was going south by Jordan's barn, he was not going in the direction of the defendant's house and was not going towards the defendant's farm, which was about four miles from Cuthbert. James G. Bowles testified that a jeep starting at the square and going towards Jordan's store would be going south, as well as towards McPherson's store. James Perkins testified for plaintiff that he found the note on the switch key of the jeep, instructing him that if Beach was not there for Perkins to take Yon and crew home. Concerning his following the instructions in the note, Perkins testified: "At Mr. Lee's farm, Frank Proctor, a negro, and Mr. Yon and Mr. Mainer got in the car and we came to town. We put Frank Proctor off at McPherson's store. He had been working for Mr. Lee four or five days and that is the first time he has ever worked for Mr. Lee. He and I both went to McPherson's store. I went in there to see if he got his check cashed because it was the first one he had gotten from Mr. Lee. The store was so crowded and the gate was locked at the house where Beach could not get the truck in and so I told him I had to go up to Mr. Lee's house. I put Mr. Yon out at Sawyer's cafe on Depot Street. He told me he wanted to get off and get dinner. Then I drove down to Miss Grover's store and put Mr. Mainer off. Grover's store is on *Page 515 
the road to Carnegie. Then I came back and put Frank Proctor off at Mr. B. A. McPherson's store. I told him that I would see that he got his check cashed. I didn't tell him I was coming back in the jeep or anything concerning the jeep. Mr. Lee's farm is located out College Street on the Eufaula Highway about two-and-one-half miles west of Cuthbert. Mr. Yon is the first man I put out and he said, `I want to see you,' but he did not say what he wanted. After I put Frank Proctor out at Mr. McPherson's I went in the store with him, but there were so many people there and I thought about Beach — his name is Loraine Griffin — I thought about the gate being locked at Mr. Lee's and Beach had the truck out. I had to go let Beach in the gate but I met him at the corner of Mr. Shaffer's. After I put Frank Proctor out I went on up College Street. I was going to Mr. Lee's house. Mr. Lee keeps his truck and his jeep at his house. He has a fence around his house and keeps the gate locked and I was going to put the jeep and truck up and lock it up. I didn't take the jeep on to Mr. Lee's house because I met Beach and he told me the girl had locked the truck up and left, and I turned around and brought Beach back to town. I did not come back to see Mr. Yon about anything. I put Beach off at the corner of the Hotel and I stopped at the A. P. store, bought some groceries, and while I was in the store I asked for some lard and the lady in there said that Mr. McPherson had some lard. . . I said, `I got to go down there,' and I got out and went through the alley and that is when I had this accident. I stopped at the A. P. and bought groceries for myself, not Mr. Lee. Mr. Lee never instructed me to buy groceries for him and he never instructed me to bring Loraine Griffin back to town. . . Mr. Lee never instructed me to get any lard. I was going to get it for myself. There is no other reason why I was going to McPherson's store. I was headed there when the accident occurred. McPherson's store is on the south side of the alley there that runs by Mr. O. H. Jordan's barn and that is where I was going when I hit Lucius Green. Mr. Lee didn't tell me to go. I didn't use the jeep to buy groceries. When I would be up town I would buy some lard and carry it back home with me. When Mr. Yon told me he wanted to see me I said all right. I didn't tell him I was coming back in the jeep, and he did not ask me if I was coming *Page 516 
back. He just said he wanted to see me. I don't know what he wanted and I never did see him from that day to this. . . I did not tell Mr. Jordan I was going down there to get Mr. Yon. That is my signature on that statement. I do not want to read that statement. I guess I have already read it. I don't know whether it is true or not. Some things on here is true and some are not. As to what is not true, I have never made a statement in front of Lucius Green, and I have not spoken to Mr. Jordan since it happened. I guess the rest of it is true and I guess everything in it is true except those two things I stated." Counsel for the plaintiff introduced the following portion of the depositions of Perkins for the purpose of impeaching the witness: "When the 12:30 whistle blew, Mr. Yon, Mr. Mainer, and a negro named Frank Proctor got on the jeep and we started to town. We turned in at Villanova Street and went by Mr. Lee's house, and I gave a boy, who was working there, his check. We came to town then and I put Mr. Yon off at Mr. Sawyer's cafe to get his check cashed. While he was doing this I carried Mr. Mainer out to the top of Blakely Hill and put him off at the store where the Carnegie Road turns off. I came on back to town and put Frank Proctor off at Mr. McPherson's store, then I started out to Mr. Lee's house to pick up Beach, who was also working for Mr. Lee, and I met him on Villanova Street on the way out there. He got on the jeep and we came back to town and I put him off at the Gay Hotel. I then circled the square and parked in front of the A. P. store, put my groceries in the jeep and started back to Mr. McPherson's store to pick up Mr. Yon to take him to Carnegie, where he lived, as Mr. Lee had told me in the note. I had the wreck between the A. P. store and Mr. McPherson's store. Mr. McPherson's corner is two stores from where I put Mr. Yon off. I was also going down there to buy some lard and to get Frank Proctor's check cashed, but the main reason I was going down there was to get Mr. Yon to take him home."
The plaintiff was severely injured when he was struck by an automobile owned by the defendant and operated by one of the defendant's employees, James Perkins. The parties agree "that the evidence *Page 517 
shows that the injuries complained of by the plaintiff were due to the negligence of James Perkins, and the only question presented by the record for review is whether [the] defendant, M. G. Lee, is liable for the negligence of James Perkins at the time of the accident."
It appeared without dispute from the evidence that James Perkins was an employee of the defendant and that he was directed by the defendant to carry a Mr. Yon, and certain other employees of the defendant, home in the defendant's automobile on the day of the accident; that these instructions were written and were received by the employee; that the employee carried Yon, and the other workers, from the farm of the defendant to Cuthbert, where Yon left the automobile for the purpose of eating dinner at Sawyer's cafe; and that the driver carried certain of the other employees to their homes and went elsewhere in and around Cuthbert.
The accident occurred between 12:30 and 1:00 o'clock on a public street or alley which ran back of Sawyer's cafe and in the direction of McPherson's store, where the defendant's employee testified he was going to purchase some lard for himself. However, at the time of the accident and as a part of the res gestae of the occurrence, the jury was authorized to find that this employee, when asked "what he was doing on that street," replied that he was "to pick up Mr. Yon," and that about 30 minutes later, Yon came walking along the street from the direction the automobile was traveling.
While this driver testified on the trial that he was traveling on this street or alley at this time for purposes of his own wholly disconnected from his employment with the defendant, the plaintiff placed in evidence certain portions of depositions taken prior to the trial wherein this witness testified that, at the time of the accident, he had "started down to Mr. McPherson's corner to pick up Mr. Yon and take him to Carnegie, where he lived, as Mr. Lee (the defendant) had told him to do in the note," and that he "was going down there to buy [himself] some lard and get Frank Proctor's check cashed, but the main reason he was going down there was to get Mr. Yon and take him home." These depositions were introduced in evidence for the purpose of impeaching the witness. If the testimony of this witness, as *Page 518 
given on the trial, which is directly conflicting in material particulars with that of other witnesses and with his sworn evidence set out in the depositions, is disregarded, as the jury was authorized to do under the law of this State (Code, § 38-1806), the presumption of law arising from the ownership of the automobile by the defendant and its operation by the defendant's employee at the time and place of the injury, under the circumstances, is sufficient to support the verdict. In this connection, see Dawson Motor Co. v. Petty, 53 Ga. App. 746,749 (186 S.E. 877), and citations.
Moreover, the jury was authorized to draw all reasonable inferences from the facts proved. It appeared that the defendant directed the driver of the automobile to use the automobile in taking Yon and the other employees home after 12:30 o'clock p. m. on the day in question, and that the accident occurred after the driver left the farm of the defendant and before he had carried yon to his home in Carnegie, and that it occurred between 12:30 and 1:00 o'clock p. m. At the time of the accident and as part of the res gestae of the transaction, this witness stated that he was there to "pick up Mr. Yon," and the jury was authorized to infer that he was to pick him up and carry him to his home, as the defendant had directed him to do. Considering the depositions of this witness only for the purpose of impeaching the witness, there is sufficient evidence in the record to authorize the jury to find that the driver of the automobile, was, at the time of the accident, an employee of the defendant and engaged in using the defendant's automobile in and about the business of the defendant, as the defendant had directed and authorized him to do, and that the defendant was responsible for the acts of negligence of his employee towards the plaintiff.
Under all the facts and circumstances of the case, the verdict of the jury, which has the approval of the trial judge, is supported by evidence, and the trial judge did not err in overruling the motion for a new trial.
There being a dissent in this case by one of the judges of the division to which the case was assigned, the case was considered and decided by the court as a whole pursuant to the provisions of the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232). *Page 519 
 Judgment affirmed. Gardner, Parker, and Townsend, JJ.,concur. MacIntyre, P. J., concurs in the judgment of affirmance.Felton, J., dissents.