O. B. HINSON, Plaintiff,

v.

UNITED STATES of America,
Defendant (two cases).

Mrs. O. B. HINSON, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Danny HINSON, a minor, by and through
O. B. Hinson, as next friend,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 1411, 1425–1427.

United States District Court
M. D. Georgia,
Macon Division.

Nov. 20, 1957.

Buckner F. Melton, Roy B. Rhoden-hiser, Jr., Andrew W. McKenna, Macon, Ga., for plaintiffs.

Frank O. Evans, U. S. Atty., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for defendant.

BOOTLE, District Judge.

These four civil actions grow out of one automobile collision and seek damages under the Federal Tort Claims Act,

28 U.S.C.A. §§ 1346(b), 2671 and 2674. In Civil Action No. 1411 O. B. Hinson sues for his personal injuries and hospital and medical bills in the amount of $250,000; in Civil Action No. 1425 he sues for the loss of services of his minor son, Danny Hinson, also injured in the collision, and for said son's hospital and medical bills, claiming $1,000; in Civil Action No. 1426 Mrs. O. B. Hinson sues for loss of consortium consequent upon her husband's injuries in the amount of $50,000, and in Civil Action No. 1427 the son, Danny Hinson, by his father as next friend, sues for his personal injuries, claiming $10,000. The defendant in each case, The United States, is sought to be held liable for negligence alleged on the part of Godfrey F. Westcott, M.D., a Captain in the Medical Corps, United States Army.

At a pretrial conference it developed that the threshold issue in each case is whether Captain Westcott was acting within the scope of his office and employment and in line of duty at the time of the collision, and it was agreed and ordered that counsel would undertake to stipulate all of the facts pertaining to this issue and that if such stipulation could be accomplished the Court would, upon the basis thereof and upon written arguments, pass upon that question before and without hearing evidence on the question of negligence and extent of injuries. The stipulation has been entered into and appears in the footnote,[1] minus the Army's active duty order and the

1. "Whereas, at a pre-trial conference as to the above captioned cases on October 18, 1957, the said captioned cases were consolidated for trial, and

"Whereas, counsel for the government and counsel for the plaintiffs named above expressed a desire to stipulate certain facts dealing with the scope of employment of a certain Captain Godfrey F. Westcott relative to these proceedings, and

"Whereas, the Court has requested that such a stipulation be made;

"It Is Therefore Stipulated by counsel of all the foregoing parties as follows:

"1.

"Godfrey F. Westcott, M.D., was sworn in as a captain, Serial No. 0–4070667, in the Medical Corps, United States Army Reserve, on September 5, 1956.

"2.

"Captain Westcott, having been sworn in, received official Army orders ordering him to active duty with pay effective September 28, 1956, and further ordering him to proceed from his home at Central State Hospital, Petersburg, Virginia, and report to the Student Detachment, Army Medical Service School, Fort Sam Houston, Texas, as his initial duty station not later than October 8, 1956. A true copy of said order is attached hereto as Exhibit A and made a part hereof.

"3.

"Said order (Exhibit A) was directed to and received by the said Captain Westcott on or prior to September 28, 1956.

"4.

"The selection of the mode and route of travel was left with Captain Westcott. The Army was obligated to provide travel payment on a mileage basis to Captain Westcott in accordance with Army Regulations 35–3035 irrespective of the mode of travel actually selected and used. A true copy of said regulations is attached hereto as Exhibit B and made a part hereof. The important consideration to the Army was that Captain Westcott report to Fort Sam Houston, Texas by October 8, 1956 for duty.

"5.

"The said Captain Westcott traveled by private vehicle, and was proceeding along Georgia Highway 49 in Bibb County, Georgia, on October 2, 1956, in his privately owned vehicle, a 1948 Packard automobile, at a time when the vehicle in which he was riding collided with a 1950 Mercury automobile being driven by one of the plaintiffs named above, to-wit: O. B. Hinson.

"6.

"At the time of the aforesaid collision, the said Captain Westcott was in an active duty status with the United States Army, having entered said status on September 28, according to the orders described above in paragraph two and attached hereto. Said Captain Westcott was traveling to Fort Sam Houston, Texas, from Petersburg, Virginia, at the time said collision occurred in order to report to said initial duty station.

Army Regulations No. 35–3035 (Travel and Transportation Allowances of Service Members—Permanent Change of Station) therein referred to, the substance of said order and regulations being sufficiently set forth in the stipulation.

The stipulated facts stated more succinctly are: Westcott, a medical doctor, was sworn in as a Captain in the Medical Corps, U. S. Army Reserve on September 5, 1956. By written order of the same date received by him on or before September 28, 1956 (Exhibit A attached to stipulation), he was ordered to active duty, said active duty and pay therefor to be effective September 28, 1956, and he was ordered to proceed from his home at Central State Hospital, Petersburg, Virginia and to report to duty at the Army Medical Service School, Fort Sam Houston, Texas as his initial duty station not later than October 8, 1956. Said order authorized, but did not direct, travel by privately owned conveyance. The selection of the mode and route of travel was left with him. The Army was obligated to pay him for his travel on a mileage basis in accordance with Army Regulations 35–3035 (Exhibit B to stipulation) irrespective of the mode of travel actually selected and used by him. The important consideration to the Army was that he report to Fort Sam Houston, Texas by October 8, 1956 for duty. Captain Westcott decided to travel by private vehicle and was proceeding along Georgia Highway No. 49 in Bibb County, Georgia on October 2, 1956 in his 1948 Packard automobile at the time his vehicle was involved in a collision with a 1950 Mercury being driven by plaintiff, O. B. Hinson. Captain Westcott was traveling alone in his Packard automobile at the time of the collision and was not transporting any property of the United States and since leaving Virginia had not engaged in any type of work ex-

cept driving the Packard automobile as aforesaid.

I find the facts to be as stipulated.

The Government contends that on these facts it cannot be held liable under the Tort Claims Act because at the time and place of the collision Westcott was not acting within the scope of his employment. Section 1346 of Title 28 U.S.C.A. in pertinent part says that the United States shall be liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (Emphasis supplied.) Section 2671 says that " '[A]cting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty," and Section 2674 says that "[T]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

The "in line of duty" phrase of this statute does not broaden the basis of liability beyond the area circumscribed by the restrictive words "within the scope of his office or employment." Cannon v. United States, 5 Cir., 243 F.2d 71 (1); United States v. Campbell, 5 Cir., 172 F.2d 500; United States v. Eleazer, 4 Cir., 177 F.2d 914(5). This case must be governed by the Georgia doctrine of respondeat superior. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L. Ed. 761; Cannon v. United States, supra.

---

"7.
"Captain Westcott was traveling alone in his vehicle at the time said collision occurred, and was not transporting any property of the United States and since

leaving Virginia as aforesaid had not engaged in any type of work except driving said automobile.
"The above stipulations entered into this 1st day of November, 1957."

The pertinent Georgia statute reads: "Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." Section 108, Title 105, Georgia Code Annotated.

The decisions of the Georgia courts recognize that the statutory phrase "within the scope of his business" is not capable of precise definition, but must be determined by an examination of the facts and circumstances, the character of the employment and the nature of the wrong, Dawson Motor Company v. Petty, 53 Ga.App. 746, 750, 186 S.E. 877, and that the test of liability is not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. Gomez v. Great Atlantic & Pacific Tea Co., 48 Ga.App. 398, 400, 172 S.E. 750. Thus Greeson v. Bailey, 167 Ga. 638, at page 640, 146 S.E. 490, at page 491, quotes approvingly from Judge Thompson in his Commentaries on the Law of Negligence, Volume 1, Section 526:

"'The test by which to determine whether the master is liable for the tortious act of his servant is not whether it was done during the existence of the employment, that is to say, during the time covered by the employment, but whether it was done in the prosecution of the master's business. Upon this subject it has been said: "In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was *at the time* engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself and as his own master *pro tempore,* the master is not liable. If the servant steps aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities."'"

and Graham v. Cleveland, 58 Ga.App. 810, at page 813, 200 S.E. 184, at page 186, quotes approvingly from the late Judge Taft in Byrne v. Kansas City, Ft. S. & M. R. Co., 6 Cir., 61 F. 605:

"'The question is one of agency. The result is determined by the answer to the further questions, whose work was the servant doing? and, under whose control was he doing it?'"

The Georgia cases hold generally that an employee who is on his way to work is not acting within the scope of his employment. Elrod v. Anchor Duck Mills, 50 Ga.App. 531(1), 179 S.E. 188; Stenger v. Mitchell, 70 Ga.App. 563, 566, 28 S.E.2d 885; Lewis v. Miller Peanut Company, 77 Ga.App. 380, 384, 49 S.E.2d 221, 223. The last cited case expresses it this way, " * * * ordinarily an employee who is on his way to work is not acting within the scope of his employment, as he has not yet commenced to attend to the business of his employer." See also 52 A.L.R.2d page 354. While in the recent case of Moye v. United States, 5 Cir., 218 F.2d 81, the Air Force enlisted man was driving his privately owned automobile to lunch rather than to work at the time of the collision, the Court wrote, on page 83:

"Where, as here, the car is the private car of the employee, no control whatever is assumed over, and no direction given to, the employee, in connection with his going *to and from* his work or to and from his meals or on other personal missions in it, and there is no evidence or even claim that he was expected to use, or did use, it on the business of his employer, it is generally the rule, and especially in Texas, that for his

acts during such periods and in such circumstances, his employer is not liable." (Emphasis supplied.)

While no Georgia decision has been cited involving the very facts of the instant case, the Georgia cases above cited are in line with the holding of several cases from other jurisdictions which have been summarized by the editors of American Law Reports, Volume 52 A.L. R.2d page 325:

"The question whether an employee acts in the scope of his employment in traveling, in his own vehicle, between jobs or assignments has been presented in a number of cases. Where the travel was between assignments of some permanence, at widely separated geographical points, it has usually been held that the employee was not acting for his employer in traveling."

The cases of United States v. Eleazer, supra; United States v. Sharpe, 4 Cir., 189 F.2d 239, and Paly v. United States, D.C., 125 F.Supp. 798, affirmed 4 Cir., 221 F.2d 958 are cases wherein the facts are quite similar to those here involved and in each case it was decided that the service man was not acting within the scope of his employment. In the Eleazer case, Lieutenant Talley was being transferred from the Cherry Point Marine Base in North Carolina to Corpus Christi, Texas. The order was dated August 15, and authorized him to "delay in reporting until September 1, 1946, such delay to count as leave" and provided that "the travel herein enjoined is necessary in the public service." Lieutenant Talley left Cherry Point on August 20, driving his own automobile and accompanied by his sister who had been visiting him. He intended to drive with his sister to Raleigh, North Carolina and then go to his home in Atlanta, Georgia, and after a brief stay there to proceed in his automobile to his post at Corpus Christi in time to report for duty on September 1st. His collision occurred shortly after he left Cherry Point while he was on the route necessary for him to follow from Cherry Point to Corpus Christi. Under the travel orders he was entitled to reimbursement from the Government for mileage at a fixed rate by the nearest route, whatever means of transportation he may have chosen. He was also on his way home for the enjoyment of his deferred leave. The Government had nothing to do with the selection of his own automobile as the means of his transportation and exercised no control over the manner of its operation. In a well reasoned opinion by Judge Parker, the Court held that Lieutenant Talley was not engaged in business of the Government at the time of the collision; that the relationship of master and servant did not exist with respect to the very transaction out of which the injury arose, that is, the driving of the automobile; that there was no right on the part of the Government to direct his driving and said, 177 F.2d on page 917:

"He was riding in his own automobile because he chose to do so, and for no other reason; and the fact that the government was to pay him mileage to Corpus Christi is no more reason for imposing liability on it for his negligent driving than for imposing liability for the negligence of a railroad company or the pilot of an airplane, if he had chosen to make the trip by rail or by air."

While Lieutenant Talley was on leave, Captain Westcott, it seems to me, was also virtually on leave. He had never reached his initial duty station and was not due there until October 8, 1956, six days after the collision. Meanwhile, he was on his own to go and do as he pleased except only that he should report at Fort Sam Houston, his initial duty station, on October 8th.

In the Sharpe case, Sgt. Thompson was a member of a Paratroop Company at Fort Bragg, North Carolina, which, in September, 1948, had been ordered to move to Eglin Field, Florida, a distance of 750 miles. The movement was accomplished by truck convoy and air transport, but Thompson and a few others who owned automobiles obtained permission to drive them, traveling at

their own expense and responsibility and without allowance of mileage and under passes which imposed no duty upon them except to report to Eglin Field at midnight on September 10. Thompson was driving his own car and was subject to no orders with respect thereto. In holding the Government not liable for his collision en route, the Court said, 189 F.2d on page 240:

"The fact that he was going to Eglin Field where it was his duty to report at a certain time does not impose liability on the government, for he had undertaken to get there on his own responsibility and the operation of the automobile was undertaken on that responsibility, not as an activity of the government. It would be as reasonable to hold the United States liable for injuries inflicted by a clerk of court while using his private automobile in traveling to the place of holding court."

In the Paly case, the sailor, Stefan, had been appointed naval escort for a deceased service man and was unable to proceed with the funeral cortege as escort because the mortician had left with the body before Stefan received his orders. Stefan's orders directed him to travel at his own expense (but subject to reimbursement) and did not direct him to use his own automobile. He used his own car, however, to attend the funeral and had a collision. Whether he used his own car was a matter of indifference to the Government. The applicable, and then current, Bureau of Personnel Manual failed to mention privately owned vehicles specifically, but, within six months after the collision, said manual was revised so as to authorize travel by privately owned cars. The District Court, following the Eleazer and Sharpe cases, held that the sailor was not acting within the scope of his employment and this decision was affirmed in 4 Cir., 221 F.2d 958.

Another case very much in point is Jozwiak v. United States, D.C.S.D.Ohio, 123 F.Supp. 65. There, Mr. Sowers, a Government employee in the Fish and Wildlife Service of the Department of Interior, was being transferred from Fort Worth, Texas to Washington, D. C. His method of travel was not dictated by the Government, but the expense of the removal of his family and furniture was paid by the Government and he was given a per diem allowance. The Government did not tell him how or when to go. The Court held that while en route in his own car he was not acting within the scope of his employment.

Having found the facts as stipulated, I further find as a fact that the plaintiffs have failed to establish by a preponderance of the evidence under all of the facts and circumstances of these cases that Captain Westcott was acting within the scope of his employment at the time and place of the collision and, accordingly, I conclude as a matter of law that the plaintiffs are not entitled to recover of the United States in these cases.

While this Court cannot be unmindful of the fact that, according to the allegations of the complaint in Civil Action No. 1411 and as developed at the pretrial conference, Mr. O. B. Hinson sustained very serious, and doubtless permanent, injuries, the needs of the parties, of course, cannot be of assistance to the Court in the determination of applicable legal principles. It is gratifying to know, however, that, as disclosed at the pretrial conference, Captain Westcott carried liability insurance and as a result of previous litigation instituted in this Court his insurance company has, in return for covenants not to sue, responded to the demands of the claimants to the extent of $14,000 for Mr. O. B. Hinson, $3,000 for Mrs. O. B. Hinson and $500 for Danny Hinson.

Pursuant to the foregoing findings of fact and conclusions of law, counsel for the defendant may prepare a judgment in its favor in each case, submitting the same to counsel for plaintiffs, who shall have five days for suggestions as to form.