# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF GEORGIA

AT THE

## OCTOBER TERM, 1895.

FLORIDA CENTRAL & PENINSULAR RAILROAD COMPANY *v.* BURNEY.

1. The charge of the court as to the methods of using the mortality and annuity tables was incorrect and misleading, and the error thus committed was not, in view of the evidence and the amount of the verdict rendered in the present case, cured by allowing the plaintiff to arbitrarily write-off a portion of the recovery.

(a) Forms for instructions suggested.

2. In an action against a railroad company by an employee for personal injuries alleged to have been occasioned by the negligence of a coemployee, no presumption of negligence arises against the company until the plaintiff has affirmatively shown that he himself was free from fault.

November 15, 1895.

Action for damages. Before Judge Sweat. Glynn superior court. December term, 1894.

Burney was employed by the railroad company as a flagman and car-coupler upon a construction train, and was injured by the negligence, as he claimed, of the fireman in running back a part of the train suddenly and rapidly against him while he was preparing to couple it to the other part, after a signal to stop had been given and before a signal to move was made; and, as he further claimed, by the negligence of the company in allowing the engine to be run

| | |
|---|---|
| 98 | 1 |
| 99 | 229 |
| 98 | 1 |
| 102 | 297 |
| 98 | 1 |
| 104 | 617 |
| 105 | 138 |
| 98 | 1 |
| 110 | 247 |
| 98 | 1 |
| a112 | 621 |
| f112 | 728 |
| f112 | 915 |
| 98 | 1 |
| 118 | 87 |
| 98 | 1 |
| 125 | 372 |
| 98 | 1 |
| f127 | 812 |
| e128 | 245 |
| 128 | 246 |
| 98 | 1 |
| f129 | 353 |
| 130 | 698 |

by the fireman in the engineer's absence by permission of the company. The injury consisted in the crushing of plaintiff's right arm (he being right-handed) so that it became practically useless for work. He was twenty-one years of age, in good health, and earning $1.45 per day; but was uneducated, and was rendered unable to labor. His medical expenses were $100. The evidence upon the issue of negligence and contributory negligence was conflicting. The jury found for the plaintiff $12,108.33, and the company moved for a new trial. Before decision on this motion, plaintiff's counsel applied for leave to write off $3,108.33 from the verdict. This was granted, and the motion for new trial was overruled. The main assignments of error in the motion are upon instructions given by the judge to the jury as to the use of the Carlisle mortality and the annuity tables in evidence. (70 *Ga.* 845, 847.) These instructions were as follows:

"In order to ascertain the present value of the diminished prospective earnings of the plaintiff, take the amount ascertained to be his diminished earning capacity at so much per year, and if you find the same to be permanent multiply such amount by the number of years of the reasonable expectancy of the plaintiff's life, then take six per cent. of the result thus obtained, and then look to the tables of mortality on page 847 of this book. You will take the number opposite the number of years which corresponds with the reasonable expectancy of life of the plaintiff, and you will then multiply such result by these figures, and this would represent the present value to the plaintiff of his diminished earning capacity, and would show the amount the plaintiff would be entitled to recover therefor, if entitled to recover at all, diminished under the rule that the court has given you in relation to the decreasing capacity of plaintiff to make and earn money as he grows older. To give you an illustration under this rule which the court has just given you: If, for instance, you should find that the plain-

tiff was permanently injured, and that his capacity to earn money had been entirely destroyed, and that he had earning capacity, and that the amount of that earning capacity was $1.45 per day, you would take that sum as an illustration, $1.45 per day, multiply that by 30 days, being the number of days in a month, which would give you $43.50; then multiply the sum by 12, the number of months in a year, which would give you $522.00, that being the earning capacity of the plaintiff per year, as thus ascertained; if you should find that his earning capacity had been totally destroyed, that would be his diminished earning capacity per year, to wit $522.00. Taking as an example, that his age as shown at the time of the injury was twenty-one years, looking to this table on page 845 and running down the first column to twenty-one, and taking the figures in the next column just opposite, it is found that the reasonable expectancy of twenty-one years old is forty and a fraction. You multiply the sum found for a year, to wit $522.00, in the example or illustration. Multiply that amount by forty, which is the number of years of expectancy of the life of one twenty-one years old, and that gives as a result $20,880, then multiply that by six per cent. and that gives as a result $1,252.08. Going then to the table on page 847 and running down the first column to twenty-one, as the age of the plaintiff in this illustration at the time of the injury, and taking the number in the next column just opposite, which is found to be thirteen and a fraction, multiply the result obtained last (in multiplying by six per cent.) by this number thirteen and a fraction, and you have as a result $16,286.40, and that, in the example which the court has just given you of one whose earning capacity, when he is twenty-one years old, is $1.45 per day, and who is permanently injured and his earning capacity totally destroyed, that, according to the rule which the court has given you, properly applied, shows the present cash value of the present prospective earning capacity to be $16,286.40."

A further assignment of error was, upon the giving in charge of the language of section 3033 of the code. This instruction was immediately followed by the language of section 3036.

*Crovatt & Whitfield* and *Denmark, Adams & Freeman,* for plaintiff in error.

*Frank H. Harris* and *Symmes & Bennet,* contra.

LUMPKIN, Justice.

1. The reporter has been directed to prefix to this opinion a statement of the instructions given by the trial judge with reference to the methods of using the mortality and annuity tables. As will be readily perceived upon reading the same, these instructions were incorrect and misleading, and, in our judgment, the error committed in giving them was not cured by allowing the plaintiff to arbitrarily write off a portion of the recovery.

As cases of tort are constantly arising, both where death has been caused, and also where permanent injuries have been inflicted, occasioning a total destruction of, or a material diminution in, the earning capacity of the injured person; and generally, on the trial of such cases, these tables are introduced in evidence; and as there is much confusion with reference to the manner of using them, we have concluded to undertake the formulation of instructions concerning their use, which, in each class of cases, respectively, may be appropriately given in charge. It must not be understood that in so doing we are presuming to dictate to our brethren of the trial courts as to how they shall charge on this subject, or to prescribe forms which they must feel constrained to follow; but as we have devoted much study and thought to this particular matter, we venture to hope that the "charges" below suggested may be found helpful.

The plaintiff in the present action sought to recover damages for an alleged permanent diminution in his earn-

ing capacity; and it was not, therefore, a case in which the value of a life was involved. It will, however, in pursuance of the plan we have adopted, be more convenient to present first suitable instructions concerning the use of the tables in a case where death was caused, and then conclude with instructions appropriate to a case like the one now in hand. These instructions, as a whole, can, by making the needed changes in phraseology, be rendered readily adaptable to a case of tort in which there was no death, but a total destruction of earning capacity.

On pages 844, 845 and 846 of the 70th *Georgia Reports* will be found, respectively, the "Northampton," the "Carlisle," and the "Actuaries" mortality tables; and on page 847 is a table "showing the value of annuities on single lives according to the Carlisle table of mortality." In order to avoid complication, we shall frame our "charges" upon the assumption that only the tables on pages 845 and 847 are before the jury, and shall designate the last simply the "annuity table." Of course, if the other tables mentioned, or tables which have not been mentioned at all, are properly in evidence, the instructions may be varied accordingly.

With reference to the "6 per cent." and "7 per cent." columns in the annuity table, we have thought it best that juries should be restricted to the use of the latter only, because seven per cent. is the legal rate of interest in this State when none is fixed by contract in writing, and calculations of annuities based upon any other rate would be purely arbitrary. Indeed, the table in the book referred to might have had, in addition to those it now contains, a five per cent. column and an eight per cent. column, or any other number of columns based on different rates of interest, in which event there would have been no safe criterion, save that just indicated, as to which of them a jury should select. With the table as it stands, limited to the two columns,

there is no good reason for taking the one rather than the other, except that which is stated above.

The instructions we have undertaken to frame for the guidance of the jury in that class of cases in which the plaintiff seeks to recover for the homicide of another, have, of course, been prepared with reference to the rule of law prevailing in this State which allows such plaintiff to recover "the full value of the life of the deceased, as shown by the evidence, without any deduction for necessary or other personal expenses of the deceased, had he lived." Code, §2971; Acts of 1887, p. 43.

Assuming, then, that an action to recover the value of a life is on trial, and that the Carlisle mortality table and the annuity table are in evidence, it would, we think, be proper to give the following instructions, which (for a purpose hereinafter appearing) we will divide, somewhat arbitrarily, into paragraphs, and designate as:

### Charge 1.

(1) In case you should find that the defendant is liable, it will be your duty to determine what amount of damages should be allowed.

(2) Certain tables are in evidence before you. One of them is the "Carlisle mortality table," and the other is a table showing the value of annuities. We will call the first "the mortality table," and the second "the annuity table." They are not binding upon you, and you are not obliged to use them, or either of them. If you use neither, you need not consider the instructions now about to be given; but as these tables are in evidence, and you have the right to avail yourselves of the assistance to be derived from them, it becomes proper to explain them, and inform you in what manner, and for what purpose, each can be made serviceable. Care, however, must be taken to avoid confusion; and you should be very particular not to use one of them where the other ought to be used. You are also cau-

tioned that you cannot advantageously use both in one and the same calculation.    While the proper use of these tables separately ought to lead to the same result, using them conjunctively or indiscriminately in the same calculation, or without understanding the real purposes they are respectively intended to subserve, will surely lead to error.

(3) You should ascertain from the evidence the annual earning capacity of the deceased; that is, seek honestly to reach a just conclusion from the facts before you as to what amount should be regarded as fairly representing his yearly income from his own labor to the end of his life, if he had not been killed; and, in so doing, give due weight to the various contingencies which will be pointed out before concluding these instructions.    It is proper to remark, just here, that the age of the deceased at the time of the killing and his probable expectancy of life may be considered in arriving at his average yearly earnings, if in your opinion, in view of all the evidence, his earning capacity would have varied at different periods in his life between the time he was killed and the time he would have died in the course of nature.

(4) Another and more direct use which you can make of the figures representing such probable expectancy of life will presently be stated.    In fixing upon this expectancy, you may consult the mortality table, which will now be explained.    This table is designed to show the expectancy of life which may be entertained by average persons of given ages.    The only material information you can derive from it is, the time which an average person of equal age with the one under consideration in the present case may be expected to live.    This table has two sets of columns, marked, respectively, "Age" and "Expectation Years."    If it should be desired to ascertain how long a person of average health and constitution, aged 33 years, would probably live, you would look for the figures "33" in the "Age" column; and opposite these figures, in the "Expectation Years" col-

umn, on the right of the "Age" column, you would find the figures "32.36," which would indicate that such a person probably had thirty-two and 36-100 years to live. In the nature of things, there can be no certainty whether any particular individual will live for a longer or shorter period than the probable expectancy of an average person of his age, as laid down in this table. In estimating the probable length of a given man's life, as compared with the average duration of life of one of the same age, his health, occupation, habits and surroundings, just as they are disclosed by the evidence, ought to be considered, and the proper weight should be given to all of these things in fixing the expectancy of the life—diminishing or increasing the figures laid down in the table according to the facts in the particular case under investigation. The age "33 years" has been selected merely for illustration. You, of course, in using the table, would select the age appropriate to the present case.

(5) Having from the evidence fixed, as accurately and as fairly as you possibly can, upon the number of dollars representing the yearly earnings of the deceased; and having ascertained from the mortality table, in connection with all the other evidence, his expectancy (that is, the number of years which he would probably have lived), you could, by multiplying one of these numbers by the other, determine approximately what would have been the gross amount of the earnings of his whole lifetime.

(6) This gross amount, when ascertained, would, of course, have to be reduced to its present value—that is, to a sum which, paid down all at once, would be the just and legal cash equivalent of such gross amount. The present value would necessarily be less than the gross amount; and the longer the life, the greater would be the difference in these respective sums. If you pursue the course above indicated, and arrive at the gross amount in the manner which has just been explained to you, it would then be incumbent

upon you to make the necessary calculations for ascertaining its present cash value. But inasmuch as the proper result can be more readily reached by availing yourselves of the work which has been done in compiling the annuity table, you may prefer to resort to it. In that event, you would not find it necessary to arrive at a gross amount, and then reduce it to present value; for the use of the annuity table enables you to accomplish the same end by a shorter process. The following illustration will aid you in understanding how to use this table:

(7) Suppose a man 33 years old was killed, and, at the time of his death, was earning $40 per month, which would make $480 per year. If it was certain that he would continue to earn this amount every year as long as he lived, his labor would represent a yearly annuity of $480; and one entitled to recover the value of his life would have the right to receive such an amount as would be the fair cash equivalent of an annuity of $480, payable in yearly installments, during the period the deceased would have lived but for the homicide.

(8) To arrive at such amount in the case supposed, the annuity table could be made available in the following manner: First, you would look in the column marked "Age" till you found the figures "33." Opposite these figures you would find, in a column marked "7 per cent." (it being on the right of the "Age" column), the figures "11.448." The meaning is, that an annuity of one dollar, in favor of an average person 33 years old, and to continue through life, would, on the 7 per cent. basis, be worth, cash down, eleven dollars and 44 8-10 cents.

(9) Therefore, multiplying $480 by the figures "11.448," would give the cash value of a like annuity of $480, viz: $5,495.04.

(10) This annuity table can be used for any age up to 103, and with reference to any sum of money representing or standing in the place of an annuity. The illustration

shows you how to use the table, but you must not confuse the figures mentioned in it with the actual figures of the case now on trial. On the contrary, you should be governed, as to these matters, by the evidence.

(11) You will also observe that the illustration given is based upon the assumption that the deceased would have actually earned $480 every year during the entire period of his life, if he had not been killed.

(12) It rarely, if ever, happens that a man labors every day until his death, or receives all the while a fixed and regular income from his labor; nor does his capacity to earn money often remain undiminished to old age. In arriving at the amount to be allowed as damages in any particular case, these things should be carefully borne in mind. The illustration given is also based upon the further assumption that the supposed person was one whose expectancy of life was that of an *average* man. If, in any case, the expectancy of the person under consideration would, under the evidence, have probably been greater, or less, than that of the average man, the amount of the damages to be allowed should be increased, or diminished, accordingly. In applying these instructions to the case which you are now trying, you will, of course, be governed by its facts and circumstances as proved. Feebleness of health, actual sickness, the loss of employment, voluntarily abstaining from work, dullness in business, reduction in wages, the increasing infirmities of age, with a corresponding diminution of earning capacity, and other causes, may contribute, in greater or less degree, to decreasing the gross earnings of a lifetime. In estimating damages, a proper allowance and deduction should be made in favor of the defendant for any diminution in income from labor which would have resulted from any of these sources. The defendant is not responsible for the consequences of the acts of others not its agents, nor for results which would in any event, and with-

out reference to the conduct or negligence of the defendant, have come to pass.

(13) In arriving at the cash value of the life of the deceased, and fixing the amount of the damages, you should take all these matters into consideration, and give them due weight.

(14) If the defendant is not liable at all, the instructions which have been given concerning these tables should be disregarded entirely. If liable, and you see proper to use the tables, or either of them, an observance of these instructions will aid you in reaching a proper conclusion as to the amount of damages to be allowed.

[*Note:* If the evidence so warrants, an additional instruction, such as is embraced in the words below quoted, may be added to paragraph 12. But this should not be done unless in view of all the testimony the propriety and fairness of such an instruction is manifest.

* * * * * * * * "You should also take into consideration, and give the proper effect to, any evidence before you, if there be such, tending to show a reasonable prospect of increased earnings on the part of the deceased."]

When the above mentioned tables are introduced in evidence upon the trial of an action for personal injuries involving an alleged diminution of the plaintiff's earning capacity, and there is evidence to warrant a finding that there was such a diminution, and that it will be permanent (that is, lasting during the plaintiff's life), the following instructions as to the methods of using the tables may be given. We will designate the same:

## Charge 2.

(1) If you find that the defendant is liable, it will be your duty to fix the measure of the plaintiff's damages. Among other things, he claims that he has been permanently injured; that his capacity to labor and earn money has been decreased, and that this condition will continue to the end

of his life.  If this contention has not been proved to your satisfaction, you will have no occasion to consult the tables concerning the use of which you will presently be instructed, and should disregard them entirely.  But if you find that the defendant is liable, and should believe from the evidence that the plaintiff was capable of earning by his labor so much per year, and, because of personal injuries wrongfully inflicted upon him by the defendant, his earning capacity has been materially reduced; and if the injuries were of such a permanent and lasting character that this decreased capacity to earn money will continue through life, the following instructions will be pertinent:

(2)  [Same as paragraph 2 of Charge 1.]

(3)  You should ascertain from the evidence the annual loss which has been occasioned to the plaintiff by reason of his injuries.  To do this, you will have to take into consideration his earning capacity before he was injured, and the per cent. (or ratio) in which that capacity has been diminished.  Seek honestly to reach just conclusions from the facts before you as to what amount would have fairly represented the yearly earnings of the plaintiff to the end of his life, had he not been injured, and as to the proportion—whether one fourth, one half, or more or less than these fractions—in which such earnings will be reduced because of his injuries.  In estimating what would have been the plaintiff's probable earnings through life, if his laboring capacity had remained unimpaired, you should give due weight to the various contingencies that will be pointed out to you before concluding these instructions.  It is proper to remark, just here, that the plaintiff's age at the time he was injured, and his then probable expectancy of life, may be considered in arriving at what would have been his average yearly earnings but for the injury, if in your opinion, in view of all the evidence, his earning capacity would have varied at different periods of his life, in case there had been no injury.

(4) [Same as paragraph 4 of Charge 1.]

(5) Having from the evidence fixed, as accurately and as fairly as you possibly can, upon the number of dollars representing the yearly loss in earnings occasioned to the plaintiff by his injuries; .and having ascertained from the mortality table, in connection with all the other evidence before you, his expectancy (that is, the number of years which, at the time of his injury, he could reasonably have expected to live), you could, by multiplying one of these numbers by the other, determine approximately the gross amount of the loss.

(6) [Same as paragraph 6 of Charge 1.]

(7) Suppose a man 33 years old, and capable of earning $40 per month, or $480 per year, was so injured that he could earn only $20 per month, or $240 per year, and that this decreased capacity to earn money would last during his entire life.   If it was certain that, but for the injuries, he would have continued to earn the full amount of $480 every year as long as he lived, his loss on account of the injuries would represent a yearly annuity of $240; and, if entitled to recover for such loss, his damages, as to this matter, should be such an amount as would be the fair cash equivalent of an annuity of $240, payable in annual installments, until the end of his life.

(8) [Same as paragraph 8 of Charge 1.]

(9) Therefore, multiplying $240 by the figures "11.-448," would give the cash value of a like annuity of $240, viz: $2,747.52.

(10) [Same as paragraph 10 of Charge 1.]

(11) For instance, you will have noticed that the case supposed in the illustration is one where the earning capacity was reduced one half.   It might be that it was reduced two thirds, or only one third, or one fourth, or any other fraction.   The true per cent. of the decreased capacity must in each case be ascertained from the evidence, the question being:  In what proportion does it show the

ability to earn money has been lessened? You will also observe that the illustration given rests upon the assumption that the injured person would have actually earned $480 every year during the entire period of his expectancy, if he had not been hurt, and his consequent loss on account of the decrease in his ability to labor is calculated upon that basis.

(12) [Same as paragraph 12 of Charge 1.]

(13) In arriving, therefore, at the amount which should be allowed the plaintiff on account of loss arising from diminished ability to labor, you should take all these matters into consideration, and give them due weight.

(14) [Same as paragraph 14 of Charge 1.]

[*Note:* In a proper case, the reading of paragraph 12 of Charge 1, as a part of Charge 2, may be followed by giving the additional instruction below quoted. In this connection, however, see note at end of Charge 1.

* * * * * * * * * "You should also take into consideration, and give the proper effect to, any evidence before you, if there be such, tending to show that there was a reasonable prospect of increased earnings on the part of the plaintiff, in case he had not been injured."]

2. The rule announced in the second head-note is well settled in this State. It was recognized in the recent case of *Georgia Railroad Company* v. *Hicks, 95 Ga.* 301.

*Judgment reversed.*