35564.  DRAPER CANNING COMPANY *v.* DEMPSEY.

DECIDED FEBRUARY 18, 1955—REHEARING DENIED MARCH 2, 1955.

*Nall, Sterne, Miller, Cadenhead & Dennis,* for plaintiff in error:
*Davis & Cullens,* contra.

TOWNSEND, J.  ■  Grounds 2 and 4 of the demurrer are insisted upon, and contend that the plaintiff cannot recover more than

$10,000 in damages, and that the amount claimed as damages ($50,000) is in excess of the amount claimed in the affidavit forming the basis for the issuance of the attachment.

The affidavit in attachment was amended by striking the original sum named as damages, which was $10,000, and substituting $50,000, the amount sued for in the declaration. The original bond was in the sum of $20,000, the maximum bond required under Code § 8-111, and accordingly was not amended. Amendments to affidavits in attachment are permissible under Code § 8-610, and this section was applied to allow material amendments in *Guckenheimer & Son* v. *Day & Higgs*, 74 *Ga.* 1 (2-6), *Fine* v. *Frankel Clothing Co.*, 22 *Ga. App.* 404 (95 S. E. 1017), and *Peyton* v. *Peyton*, 31 *Ga. App.* 470 (120 S. E. 689), among other cases. *Casey & Hedges Mfg. Co.* v. *Dalton Ice Co.*, 94 *Ga.* 407 (3) (20 S. E. 333), and other cases relied on by the plaintiff in error have no application here, as they relate to situations where there was no amendment to the affidavit in attachment. These grounds of demurrer are without merit.

■ It is contended in special ground 5 of the amended motion for new trial that the verdict of $20,000 is grossly excessive. In this regard, the evidence for the plaintiff authorized the following findings: property damage to the automobile was $315. Medical expenses to the time of trial were $280.50. The plaintiff sustained injuries to his knees, back, and head as well as other bruises, with corresponding pain and suffering. There was some evidence that the damage done his knee was permanent, and it was proved that due to this injury he could no longer perform his civil-service job as stokerman, which would within five years have put him under a pay schedule of $286 per month; and he was transferred to a job as oilerman carrying a maximum pay schedule of $265 per month, so that the difference in pay under these maximum rates would represent a loss of $252 per year (although the transfer resulted in a small actual increase in pay until the length of service would authorize pay schedules in the higher brackets). The jury was authorized to find: That the plaintiff's daughter received a hernia as a result of the collision, resulting in loss of her services to the plaintiff, and that an operation was indicated to correct this condition, which would cost $350. This child was 16 years of age. The son, 10 years of age, received injuries to

four front teeth; it was very likely these teeth would be lost by abscesses; the treatment might involve a period of 7 or 8 years with numerous trips to the dentist, involving crowns and bridges, yearly X-rays and so on, at an expense of up to $500. The plaintiff's wife received injuries to her head, arms, shoulder, hand, and ankles, spent 7 weeks in a cast, had to be taken daily by her husband for electric-therapy treatment for a period of 12 or 13 weeks, and may need further treatment of this kind. As a result of her injuries, she cannot dress or bathe herself or do anything with her right hand and cannot perform her usual services in cooking, keeping house and so on. There will be permanent injury to her wrist, fingers, and forearm. Her husband will have the burden of seeing that she gets necessary medical attention and of transporting her, as well as the son and daughter, to various places for that purpose, and he has been deprived of her services, companionship, and consortium since the collision, and will continue to suffer this loss.

Reviewing courts will not consider an assignment of error upon a verdict on the ground that it is excessive unless it is made to appear that it was due to prejudice, bias, or mistake. *Knight* v. *Northey*, 21 *Ga. App.* 46 (1a) (93 S. E. 535); *Lamb* v. *Davis*, 20 *Ga. App.* 240 (92 S. E. 1009). There is no such showing here. However, in view of the evidence of the plaintiff's own injuries and loss of earning capacity, pain and suffering, and the permanent loss of his wife's services, together with evidence of the burden which has been placed on him up to the trial, and which will continue for years to come, of providing medical attention for the members of his family, transporting them at regular intervals, in some cases daily, for long distances so that they can receive the proper treatment, and providing for the services of himself or some other person to assist his wife in almost every activity, it would seem that the verdict here was no more than adequate, and fully warranted under the evidence. This ground is without merit.

■ Special grounds 6 through 10 will be treated under this general division of the opinion, since they contend that the trial judge erred in his charge in certain respects and in his failure to charge in other respects, as will hereinafter more fully appear. Among other things, he charged as follows: "If the jury should

find that the plaintiff had suffered injuries to his person which will incapacitate him or reduce his earning capacity for a time extended in the future, the jury would determine the extent of the diminution of capacity to earn money, for how long a time that loss or diminution will continue, and the reasonable value of such lost earnings; having done that the jury would reduce the loss to its present value, using a basis of reduction 7% as the legal value of money in Georgia. To illustrate, gentlemen, one hundred dollars due and payable today would be worth one hundred dollars today; one hundred dollars to become due and payable one year from today would not be worth one hundred dollars today, it would be worth today only the sum to which when you add the interest at the rate of 7% per annum for one year, would principal and interest together make one hundred dollars. To carry the illustration one step further, one hundred dollars due and payable two years from today would not be worth one hundred dollars today, neither would it be worth as much as one hundred dollars to become due and payable one year from today, it would be worth today that sum to which when you add interest at the rate of 7% per annum for two years, would principal and interest together make one hundred dollars. This is the method by which earnings, unearned earnings, extending into the future may be reduced to their present value.

"Gentlemen, certain tables have been introduced in evidence which you can use on this branch of the investigation as to damages if you desire to do so. You are not obligated to do so, but you may, if you prefer, use these tables. They have been introduced in evidence, and you will have the tables out with you, together with the pleadings."

In special ground 6 it is contended that this charge constitutes reversible error because, it is contended, the charge authorizes the jury to return a verdict for damages to be allowed for diminution of future earnings, it being contended further that there is no evidence which would authorize such recovery. Special ground 8 complains that the trial court erred in failing, in connection with the foregoing charge or elsewhere, to call to the attention of the jury that in the plaintiff's declining years there might be a decrease in his capacity to labor and in his ability to earn money, and that this also should be taken into consid-

eration in fixing the amount of damages that might be found for the plaintiff as diminution of future earnings. Special ground 7 assigns error on that part of the foregoing charge relating to the Carlisle mortality tables, because the court did not in connection therewith or elsewhere charge that, if the jury should find from the evidence that the injuries sustained by the plaintiff were of a temporary nature rather than of a permanent nature, they should disregard the evidence of the mortality table in its entirety. These grounds will be considered in this order.

■ There was evidence from which the jury was authorized to find that, after the plaintiff sustained his injuries, he was shifted from one civil-service category as an employee of the City of Atlanta to another; that this shift was because he was unable to continue in the former category due to his injuries; that this resulted in a temporary increase in pay of $16.50 per month, but was temporary only, due to the fact that both jobs fell into classifications with specified increments based on length of service, so that within a 5-year period and from then on under such pay schedules the plaintiff would be losing $21 per month. While the rule of law that it is error to charge on future diminished earning capacity unless there is some evidence upon which the jury can pass with reasonable certainty in arriving at the amount of such damages is recognized (*Rome Ry. & Light Co.* v. *Duke*, 26 *Ga. App.* 52, 105 S. E. 386), there is some evidence here which authorized the jury to find diminished earning capacity with reasonable certainty, and accordingly this assignment of error is without merit.

■ An examination of the rules of law controlling special ground 8 discloses that there are cases holding that it is reversible error, in connection with a charge on diminished earning capacity, to fail to charge that earning capacity may be diminished by illness, old age and the like. *Western & A. R.* v. *Roberts*, 144 *Ga.* 250 (8) (86 S. E. 933); *Atlantic Coast Line R. Co.* v. *Thomas*, 83 *Ga. App.* 477 (7) (64 S. E. 2d 301). However, since there are other cases holding that this failure does not constitute reversible error, it can not be said that in every case where there may be permanent diminution in earning capacity it is reversible error, as an inflexible and invariable rule, to fail to call this fact to the attention of the jury. *Roberts* v. *McClellan*, 80 *Ga. App.*

199 (55 S. E. 2d 736); *Mayor &c. of Griffin* v. *Johnson*, 84 *Ga.* 279 (5) (10 S. E. 719). An examination of the manner in which our appellate courts have dealt with this problem discloses that this failure constitutes reversible error where the jury is charged in such way as to lead them to reach a mathematical figure based solely on loss of earnings for life. *Central R. & Bkg. Co.* v. *Dottenheim,* 92 *Ga.* 425 (17 S. E. 662); *Florida Central &c. Ry. Co.* v. *Burney,* 98 *Ga.* 1 (26 S. E. 730); *Central of Ga. Ry. Co.* v. *Mosely,* 112 *Ga.* 914 (38 S. E. 350). Aside from cases holding that it is not reversible error to fail to charge this principle on account of the verdict being no more than it should be in any event, it is also held not reversible error where the law as to future diminished earnings has been charged in such way that the jury would not thereby be misled into using a precise mathematical yardstick indicated by the trial court. *Central of Ga. Ry. Co.* v. *Ray,* 129 *Ga.* 349 (2) (58 S. E. 844); *Western & A. R. Co.* v. *Frazier,* 66 *Ga. App.* 275 (11) (18 S. E. 2d 45). It is necessary, therefore, to distinguish between those cases holding that this failure does not constitute reversible error and those cases holding that it does.

In *Central Railroad Co.* v. *Dottenheim,* supra, the court charged: "First, if you find his capacity to labor, make money, has been permanently diminished, you would determine how much. If, for instance, a man was earning $2,000 a year and the effect of the injury would be to leave him able only to earn $1,000, you would of course see his earning capacity would be diminished one half . . . then *from those two facts,* the amount of his diminution, its extent and the length of time that he would expect to live, you would reach such an amount as would make good to him the loss year by year, and at the end of the time be itself consumed." (Emphasis added.) The court thus gave the jury an inflexible mathematical yardstick by which they must determine the damages based on: (1) the amount of diminution, (2) multiplied by the life expectancy, and (3) reduced to present cash value. The court held that such charge was error in that it authorized the jury to find that a permanent injury would result in a diminution of earning capacity from that cause alone without regard to other factors. This, as a matter of fact, not only authorized but required the jury in that case

to reach such a conclusion, as the judge also charged in that connection: "From those two facts, the amount of his diminution, its extent and the length of time that he would expect to live, you would reach such an amount as would make good to him the loss year by year, and at the end of the time be itself consumed."

In *Florida Central Ry. Co.* v. *Burney,* 98 *Ga.* 1, supra, a charge was disapproved which contained in part the following language: "In order to ascertain the present value of the diminished prospective earnings of the plaintiff, take the amount ascertained to be his diminished earning capacity at so much per year, and if you find the same to be permanent, multiply such amount by the number of years of the reasonable expectancy of the plaintiff's life, then take six percent of the result thus obtained, and then look to the tables of mortality." Here again, the court assumed a permanent injury, and, basing the same on the life expectancy in the mortality table, gave an inflexible arithmetical standard for arriving at the loss of earning capacity. The opinion does not deal with the errors in detail, but sets out an approved charge (containing the instruction on diminution of earning capacity by old age, etc.) which has, on many occasions up to the present, been approved by the Supreme Court and this court.

Thereafter, in *Central of Ga. Ry. Co.* v. *Mosely,* 112 *Ga.* 914, supra, a charge as follows was disapproved on the same ground: "If you use the [annuity] table, find out how much he is injured, find out how much he will probably fail to receive during the balance of his life by reason of his injuries, and then reduce that to the cash value."

Thus, in all of those cases, the reversal was on the ground that the court gave to the jury an incorrect mathematical yardstick for determining future lost earnings, for, in each case, if the jury followed the instructions of the court, it was precluded from any consideration of such matters as increased or decreased future earnings, variance in length of life, or other variables which must naturally enter into any such computation.

On the other hand, in *Central of Ga. Ry. Co.* v. *Ray,* 129 *Ga.* 349 (2), supra, the court, in a death action, charged on the use of mortality and annuity tables, and that the jury was not bound to use these tables, and then added that the question of the value

of a life if one is entitled to recover it is a question of fact to be determined by the evidence in the case. Error was assigned on the failure to charge on the subject of estimating damages, that decrease in earning capacity naturally results from advancing age, probable loss of employment, and inability to constantly labor and secure continuous work. The court held, on appeal, that there was no error in this portion of the charge, saying: "Juries are presumed to be as cognizant of the common phenomena of human experience as the judge; and if their attention is specially desired to be directed thereto, a timely written request should be made."

In the present case, it should be noted that the judge did not assume, or even directly refer to, the possibility that the injuries might be permanent throughout the lifetime of the plaintiff, and he emphatically did not give the jury an obligatory yardstick for determining lost earnings, such as was given in the *Dottenheim* and *Burney* cases, supra, based on substracting the diminished yearly earnings from the yearly earnings before injury, multiplying the difference by the average life expectancy, and reducing the result to present cash value. The jury here were told that, if the earning capacity was reduced "for a time extended into the future," they should determine "for how long a time that diminution will continue, and the reasonable value of such lost earnings." There was, of course, no evidence either here or in the cited cases that old age, illness, and unemployment diminish earning capacity. It is always proper for the court so to charge where such an instruction is applicable, but the court in thus instructing the jury is drawing, not from the evidence in the case, but from common knowledge of the vicissitudes of life. The rule of law laid down in the *Ray* case, supra, to the effect that such knowledge is possessed by the jury as well as by the judge, seems to us a rule of common sense. This case has never been disapproved or overruled, and was followed in *Western & A. R. Co.* v. *Frazier,* supra. The charge in this case is not subject to the vice of those in the *Dottenheim* and other like cases, and accordingly, under the ruling in *Georgia Ry. Co.* v. *Mosely,* supra, was not reversible error, no request for such charge having been made.

■ In connection with a proper consideration of special ground 7 of the amended motion for new trial, it appears that,

while the trial court failed, as contended, to explicitly instruct the jury to disregard the mortality table in the event the plaintiff was found from the evidence to have suffered only temporary injuries, yet an examination of the whole excerpt from the charge as the same appears in this division of the opinion discloses that the charge of the court as given had this effect. Regarding the mortality table, the court instructed the jury in substance that it had been introduced in evidence and in relation to "this branch of the investigation" as to damages (the question of future diminished earning capacity), these tables could be used by the jury or not as they desired. On the question of the right to recover damages for future diminution of earning capacity, the court charged, as shown by the excerpt, in substance that, if the injuries suffered by the plaintiff should reduce his earning capacity for a time extended in the future, the jury would determine the extent of the diminution of capacity to earn money, *for how long a time this condition might continue* and the reasonable value thereof. The charge regarding the mortality table immediately followed this. The charge therefore must have been understood by the jury as meaning that, in determining how far in the future the diminution of earnings, if any, would continue, if it was found to continue throughout life, the mortality table could be used as evidence of the length of life. There was nothing in the charge which could have led the jury to believe that only permanent injuries were under consideration. The very language of the charge is ample evidence of this fact. The rule of law is well recognized that, where the evidence authorizes the jury to find either temporary or permanent injury, an instruction on the measure of damages for permanent injury only, to the exclusion of the manner of computing damages for injury of a temporary nature, is such error as to require reversal. See *Smith v. Payne,* 85 *Ga. App.* 693 (70 S. E. 2d 163), and citations. However, in that case the court charged at length on the method of computing damages if the injuries were found to be permanent, including the use of the mortality tables as a means for determining life expectancy, and then failed to refer in any manner to the measure of damages if the loss of earning capacity was temporary only.

On the other hand, in the present case the court charged the

jury affirmatively to determine for how long a time the loss or diminution would continue, and then authorized, immediately thereafter, a consideration of the mortality table. Cases holding that the charge on the annuity tables, without pointing out that they are inapplicable where the injury is temporary only, are recognized. *W. & A. R. Co.* v. *Smith,* 145 *Ga.* 276 (6) (88 S. E. 983); *W. & A. R. Co.* v. *Knight,* 142 *Ga.* 801 (83 S. E. 943). Obviously, however, the vice in the charge in such cases is that it amounts to an implication on the part of the trial court that only permanent injury is involved. As herein pointed out, that vice is not present in this case, where the trial court affirmatively instructed the jury to determine how long in the future this condition would continue and then only authorized the use of the mortality table. The charge, therefore, must not have confused or misled the jury into considering only permanent diminution of earning capacity as opposed to temporary disability, for which reason no reversible error is shown by this special ground.

▊ Special grounds 9 and 10 complain that the court erred in charging in their entirety Code §§ 68-306 and 68-309, as follows: "I charge you that every owner or operator of a machine shall have equal rights upon the highway with all other users of such highways; and no person or persons shall throw glass, nails, tacks or other obstructions upon the public highways used and traversed by automobiles or unreasonably obstruct or impede the right of travel of such owner or operator while operating, propelling or driving such machine. . . I charge you that the operator of a motor vehicle or motorcycle in motion on any public street or highway shall give due and timely warning by using his signalling apparatus to every person riding or driving any horse or horses or horse-drawn or other vehicle which he may meet or approach; and he shall likewise give due warning and reduce speed upon approaching any sharp curve, dugway, descent or other dangerous place upon such street or highway."

Where the court gives in charge an entire Code section, a part of whch is inapplicable to the issues, this is no ground for reversal unless the inapplicable portion is such as to mislead or injuriously affect the jury. *Smith* v. *Payne,* supra; *Eagle & Phenix Mills* v. *Herron,* 119 *Ga.* 389 (3) (46 S. E. 405). There was, of course, no evidence that any nails or tacks were in the

road, and the jury could not have been influenced by the portion of the charge on that subject. The injuries arose out of an intersection collision, as to which the plaintiff contended that the defendant made a left turn into his lane of travel without any notice or warning whatsoever, so that he was unable to avoid the collision, which contentions were denied by the defendant's answer. The defendant driver on the trial testified that he came to a stop to allow a truck to go past; that he saw the plaintiff's car, but thought he had plenty of time to make it, and that he had not cleared the road when the impact occurred. Accordingly, the right to equal use of the road, as between the parties was in issue. It was equally an issue, under the evidence, whether the defendant, by turning in front of the oncoming automobile of the plaintiff, obstructed his right of way, and it was an issue of fact as to whether the intersection constituted a dangerous place in the highway, especially when being used in the manner in which it was shown to have been used. Both the pleadings and the evidence raised an issue as to whether the defendant did give a warning in making this turn. Although failure to give such warning is not alleged in the pleadings as negligence, a charge thereon was proper, as the pleadings might have been amended so as to cover evidence thereon admitted without objection. *Whatley* v. *Henry,* 65 *Ga. App.* 668 (1) (16 S. E. 2d 214). These grounds are without merit.

■ The general grounds of the motion for new trial are expressly abandoned.

The trial court did not err in denying the motion for a new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*