**Fred CULVER, By and Through Juanita BELL as next friend, Plaintiff,**

v.

**Gerald FOWLER, et al., Defendants.**

**Civ. A. No. 92–42–4–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 2, 1994.

Lonzy F. Edwards, Macon, GA, for plaintiffs.

R. William Buzzell, II, Loretta Lynn Pinkston, Macon, GA, and Walter E. King, III, Gray, GA, for defendants.

OWENS, Chief Judge:

On August 29, 1994, this court held a non-jury trial in the above-captioned case. Plaintiff alleges that defendant Gerald Fowler, as a police officer in the City of Sparta, Georgia Police Department, used excessive and unnecessary force in restraining plaintiff while plaintiff was in police custody. In addition, plaintiff alleges that defendant Brian Etheridge, also a police officer in the City of Sparta Police Department, failed to take reasonable steps to prevent the use of excessive force by defendant Fowler. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On September 11, 1991, the City of Sparta, Georgia Police Department received a complaint that plaintiff Fred Culver was causing a disturbance at a local pool hall and a laundromat located across the street from the pool hall. Fred Culver is a middle-aged, mentally retarded black male well-known in the City of Sparta as a heavy drinker. Officers Gerald Fowler and Brian Etheridge, the only officers on duty, responded to the call.

When the officers arrived at the laundromat, they discovered Culver sitting inside. Culver, upon seeing the officers, immediately stood up and began walking toward the rear of the laundromat. Officer Etheridge, however, went around to the back of the laundromat and apprehended Culver as he attempted to leave the premises. Officer Etheridge then escorted plaintiff back to the front of the laundromat, where the patrol car was parked.

Because of Fred Culver's penchant for heavy and frequent drinking, Officers Etheridge and Fowler had on numerous occasions prior to September 11 responded to calls concerning complaints about Culver. Often, the officers would simply take Culver home. However, on this occasion, as Officer Fowler attempted to place Culver inside the patrol car, Culver slapped at Fowler's arm. The officers, therefore, decided that it would be appropriate to place Culver under arrest. Accordingly, Culver was placed in the patrol car and transported to the station house.

At the station house, the officers asked plaintiff to empty his pockets and remove his belt. Plaintiff, however, refused. Officer Fowler then placed Culver up against a wall and removed the belt. After removing the belt, the officers began to escort Culver to the cellblock. As they approached the cellblock, Culver began slapping at Officer Fowler. Officer Fowler attempted to walk Culver up against a wall in an effort to restrain him. Culver, however, lunged at Officer Etheridge, who was standing next to Fowler. Fowler stepped in between Etheridge and Culver and brought his knee up into the groin area of Culver. At the same time, Etheridge slapped Culver's hands away as Culver attempted to grab Etheridge.

Fowler again attempted to restrain Culver against the wall. Culver, however, continued to resist and lunged at Fowler. As before, Fowler brought his knee up into the groin area of Culver as Culver approached. After kneeing Culver in the groin, Fowler was able to gain control over Culver and placed him in a cell. Culver was released the following day.

On September 12, 1991, Culver, complaining of swollen testicles, was taken to Dr. George Green. Dr. Green referred Culver to the Baldwin County Hospital. Subsequently, Culver underwent an operation to correct scrotal swelling and bleeding.[1]

On January 21, 1992, Fred Culver brought suit against Gerald Fowler, Brian Etheridge, Chief of Police Walter Garrett, and the City

---

1. The medical records of Fred Culver indicate Culver had also visited Dr. Green on June 3, 1991 complaining of scrotal swelling.

of Sparta, Georgia, under 42 U.S.C. § 1983.[2] Plaintiff asserts that the actions of defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.[3] On November 4, 1993, the court granted defendants Walter Garrett and City of Sparta's motion for summary judgment.

## CONCLUSIONS OF LAW

"A proper claim for damages under the Eighth Amendment requires proof of two distinct elements: a subjective component and an objective component." *Tittle v. Jefferson County Commission,* 10 F.3d 1535, 1541 (11th Cir.1994) (Kravitch, J., concurring); *see also Davis v. Moss,* 841 F.Supp. 1193, 1197 (M.D.Ga.1994).

"The objective analysis of an Eighth Amendment claim focuses on whether the deprivation is of a serious nature." *Davis,* 841 F.Supp. at 1197. In this regard, a deprivation is of a "serious nature" when the challenged actions violate contemporary standards of decency. *Hudson v. McMillian,* 503 U.S. 1, ——, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *see also Tittle,* 10 F.3d at 1543.

The subjective component requires the plaintiff to "prove that the defendant acted with a certain state of mind . . . ." *Davis,* 841 F.Supp. at 1197. "[W]henever [police officers] stand accused of using excessive physical force in violation of the Cruel and unusual Punishments Clause, the core judicial inquiry is . . .: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at ——, 112 S.Ct. at 999.

[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm" as is tantamount to a knowing willingness that it occur. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."

*Id.*

### I. Gerald Fowler

#### A. Objective Component

■ The court finds that the actions of Gerald Fowler in kneeing plaintiff in the groin violated contemporary standards of decency. Faced with a rebellious prisoner, Officer Fowler ignored his training and chose to adopt a method of control that is both barbaric and cruel, particularly when applied to a mentally-retarded and inebriated individual. The use of force by Fowler was of the sort " 'repugnant to the conscience of mankind.' " *Id.* at ——, 112 S.Ct. at 1000. Accordingly, plaintiff has satisfied the objective component of his Eighth Amendment claim.

#### B. Subjective Component

As discussed above, there are a number of factors the court should consider in determining whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at ——, 112 S.Ct. at 999. First, the court may consider the extent of injury suffered by Fred Culver. *Id.* As the medical records of Fred Culver indicate, Culver suffered scrotal problems well prior to the September 11, 1991 incident. Defendants suggest that plaintiff's scrotal surgery was the result of this pre-existing condition, and

---

**2.** Section 1983 provides, in part: "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

**3.** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

not the result of the September 11, 1991 incident. The court, however, finds that although the surgery cannot be attributed solely to the September 11 incident, neither can the court attribute the surgery solely to the pre-existing condition. Instead, the court finds that the actions of Gerald Fowler aggravated plaintiff's pre-existing medical condition and contributed significantly to the need for surgery.

The second factor suggested by the Supreme Court in *Hudson* is for the court to evaluate the need for application of force. *Id.* As the court has already found, Fred Culver attempted to lunge at both Gerald Fowler and Brian Etheridge as the two officers attempted to escort Culver to the cell block. Accordingly, the court finds that the actions of plaintiff warranted the use of some degree of force on the part of Gerald Fowler. This conclusion, however, necessarily leads into the third factor to be considered: that is, the relationship between the need for force and the amount of force used. *See id.* In this regard, the court finds both the amount of force and the type of force used by Officer Fowler unreasonable in light of the situation faced by Fowler. Plaintiff is a middle-aged, mentally retarded male of medium stature. At the time of the incident at issue, plaintiff was heavily intoxicated. The court does not believe that plaintiff presented such a threat to the officers that Officer Fowler was authorized to knee plaintiff twice in the groin to control plaintiff.

The fourth factor to be considered by the court is the threat reasonably perceived by Officer Fowler. As discussed above, the court finds it difficult to believe that Officer Fowler reasonably perceived Fred Culver as a serious threat to either Officer Etheridge or himself.

Finally, the court may consider whether any efforts were made " 'to temper the severity of a forceful response.' " *Id.* Gerald Fowler's actions were not last-ditch efforts to restrain an uncontrollable prisoner. Instead, Fowler kneed plaintiff in the groin as an initial response to plaintiff's aggressiveness. Fowler made no effort to control plaintiff through a more accepted and humane means of physical restraint.

After weighing the factors outlined in *Hudson,* the court finds that defendant Gerald Fowler's use of force was not applied in a good-faith effort to maintain discipline, but to maliciously and sadistically cause plaintiff harm. Accordingly, the court finds in favor of plaintiff Fred Culver in regard to his Eighth Amendment claim against Gerald Fowler.

### II. Brian Etheridge

■ After a careful review of the record and the evidence presented at trial, the court can find no basis for liability on the part of Brian Etheridge. Except for slapping away plaintiff's hands, Etheridge did not strike, kick, knee, or otherwise physically assault plaintiff in any manner. Further, there is no evidence that sufficient time existed for Etheridge to step in and prevent any assault of plaintiff. Accordingly, the court finds that plaintiff has failed to establish that defendant Brian Etheridge subjected plaintiff "to the deprivation of any rights, privileges, or immunities secured by the Constitution...." 42 U.S.C. § 1983.

### DAMAGES

■ In light of the above findings of fact and conclusions of law, an award of damages to plaintiff is appropriate to compensate for the pain he suffered as a result of the September 11, 1991 incident. Accordingly, the court awards plaintiff $25,000.00 in compensatory damages. Further, the court finds that special damages in the amount of $6,012.73 are warranted to reimburse plaintiff for medical expenses incurred.

■ Finally, the court also concludes that punitive damages should be awarded in this case. *See Smith v. Wade,* 461 U.S. 30, 51–56, 103 S.Ct. 1625, 1637–40, 75 L.Ed.2d 632 (1983) (punitive damages appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). The court has already found that Gerald Fowler acted with a malicious intent to harm Fred Culver. Kneeing a prisoner in the groin is a barbaric and cruel means of con-

trol. Despite a variety of approved prisoner control techniques available to Fowler, he chose to use a method of control that maximizes pain and subjects the prisoner to a high risk of serious injury. The situation faced by Fowler simply did not warrant the use of this type of force. Accordingly, an award of punitive damages is appropriate. The court awards plaintiff $25,000.00 in punitive damages.

### CONCLUSION

The court directs the Clerk of Court to enter judgment in favor of plaintiff Fred Culver with regard to his Eighth Amendment claim against defendant Gerald Fowler. The damage amounts should be entered as set forth in the preceding section of this Order, for an award of compensatory damages in the amount of $25,000.00 and award of special damages in the amount of $6,012.73, and an award of punitive damages in the amount of $25,000.00. The Clerk of Court is further directed to enter judgment in favor of Brian Etheridge on plaintiff's Eighth Amendment claim against Etheridge.

**SO ORDERED.**